John JOHNSON, Rocklyn Johnson, and Marjorie Ulmer, Appellants,

v.

H.F. SCHAUB, Appellee.

No. S–5220.

Supreme Court of Alaska.

Feb. 11, 1994.

---

Russell W. Pritchett, Bellingham, WA, for appellants.

Harold M. Brown and Donald J. Manning, Heller, Ehrman, White & McAuliffe, Anchorage, for appellee.

Before MOORE, C.J., and RABINOWITZ, BURKE, MATTHEWS and COMPTON, JJ.

## OPINION

RABINOWITZ, Justice.

This appeal concerns a promissory note signed by John Johnson ("J. Johnson") and Marjorie Ulmer ("Ulmer") payable to H.F. Schaub ("Schaub") and an addendum securing the note signed by J. Johnson and Rocklyn Johnson ("R. Johnson"). At issue is whether the superior court erred in denying Ulmer and the Johnsons' second motion for a

continuance, in ruling that no genuine issue of material fact existed with regard to the note's validity, and in holding R. Johnson jointly and severally liable for payment of the note.

## I. FACTS AND PROCEEDINGS

Schaub agreed to loan money to J. Johnson and Ulmer to purchase the M/V ZE-NITH, a marine vessel, from Alaska Shipping Company ("ASC"). At the time of sale the vessel was mortgaged to First Bank of Ketchikan. J. Johnson and Ulmer borrowed $36,254.76 from Schaub to meet the 1989 mortgage payments on the ZENITH. After execution of the promissory note, Schaub paid the $36,254.76 directly to First Bank of Ketchikan.

Six months after executing the promissory note and taking possession of the ZENITH pursuant to the contract for sale, J. Johnson and R. Johnson executed an addendum to the promissory note.

Thereafter the Johnsons and Ulmer refused to make payments on the promissory note, and Schaub filed suit. The Johnsons answered and asserted several counterclaims based on promissory estoppel, misrepresentation, breach of warranty, and conversion. Trial was set for February 3, 1992.[1]

On January 27, 1992 the superior court granted a continuance to Ulmer and the Johnsons because J. Johnson was scheduled for surgery due to cancer. Trial was reset to commence on March 23, 1992. Ulmer and the Johnsons moved for a second continuance in late February based on J. Johnson's delayed recovery from surgery and on advice from his physician. J. Johnson's surgeon, William G. Griggs, M.D., called the surgery a "major operation," and stated that it would take "approximately three months for [J. Johnson] to fully recuperate. It will probably be the latter part of May before he will

have sufficient energy level and strength to travel."

In his response to this second motion for continuance, Schaub advised the superior court that he sustained a fall in mid-February, causing a decline in his health. As a result, Schaub stated that he also would be unable to attend the trial scheduled for March 23, 1992.[2] Although he did not oppose the second motion for a continuance, Schaub requested that the court rule on his then pending motion for summary judgment, since a favorable ruling would render moot the second motion for a continuance. After considering the summary judgment motion, the superior court ruled that the promissory note was valid, and that genuine issues of material fact precluded summary judgment only as to the Johnsons' counterclaim for misrepresentation. In conjunction with this ruling, the superior court denied the motion for a second continuance, holding that trial would commence on March 23, 1992 as scheduled.[3]

On March 19, the Thursday before trial, J. Johnson indicated to his attorney that he would be able to participate telephonically at the March 23, 1992 trial. Schaub's counsel was advised of this decision. The next day, March 20, the attorney for Ulmer and the Johnsons first learned that J. Johnson's physician had prohibited him from participating in any court proceedings, including telephonic participation, until his blood pressure was under control. Prior to receipt of this advice, counsel had expected J. Johnson to participate telephonically. Ulmer and the Johnsons' counsel filed a trial brief on March 20, 1992, which, in part, indicated that counsel was attempting to obtain an affidavit from J. Johnson's physician, and that counsel expected to file the affidavit in court on March 23, with a third motion for a continuance.

---

1. While the pretrial order signed November 1, 1991 indicates that the trial was set for February 3, *1991*, the court clearly intended for trial to begin in February 1992.

2. Schaub testified that he fell on some steps and dislocated or broke his arm, that he took pain medicine every morning and noon, and that he needed help putting on his clothes.

3. The Johnsons' counsel was on vacation from March 5, 1992 through March 17, 1992. Upon his return he learned of the superior court's denial of the second motion for continuance. Although he believed his client was severely prejudiced by being unable to appear in person, he planned to have his client participate telephonically.

Ulmer and the Johnsons filed their third motion for a continuance in open court on March 23. The superior court denied this motion, citing Schaub's appearance for trial,[4] the late filing of the third motion for continuance,[5] the "very narrow" issues of material fact which remained for trial, and the failure to take steps to preserve J. Johnson's testimony for trial.

Subsequently, the superior court proceeded to trial on Ulmer and the Johnsons' misrepresentation counterclaim. Schaub was present, but J. Johnson, R. Johnson, and Ulmer were not. After arguing that "[w]ithout John Johnson's testimony, I cannot win," Ulmer and the Johnsons' trial counsel waived a jury trial. Schaub's trial counsel and the judge agreed that it would be a "charade" to select a jury if the Johnsons and Ulmer were not going to put on a case. Ulmer and the Johnsons' trial counsel then outlined the misrepresentation counterclaim, but offered no proof. Because Ulmer and the Johnsons presented no evidence, Schaub offered no evidence. At this point the superior court entered judgment to Schaub, dismissing with prejudice Ulmer and the Johnsons' misrepresentation counterclaim.

On May 29, 1992, the superior court entered judgment for Schaub in the principal amount of $36,254.00, plus prejudgment interest of $16,850.66, costs of $708.54, and attorney's fees of $7,810.59, for a total judgment of $61,623.79.

## II. THE SUPERIOR COURT ERRED IN ITS DENIAL OF THE SECOND MOTION FOR CONTINUANCE OF THE MARCH 23, 1992 TRIAL.

■ "Generally, a trial court's refusal to grant a continuance will not be disturbed on appeal unless an abuse of discretion is demonstrated." *Gregoire v. National Bank of Alaska,* 413 P.2d 27, 33 (Alaska), *cert. denied,* 385 U.S. 923, 87 S.Ct. 238, 17 L.Ed.2d 147 (1966). The trial court's decision to deny a continuance will be reviewed in light of the particular facts and circumstances of each individual case to determine whether the denial was so unreasonable or so prejudicial as to amount to an abuse of discretion. *Siggelkow v. Siggelkow,* 643 P.2d 985, 987 (Alaska 1982).

In *Siggelkow,* we recognized that "the trial court's legitimate concern for preventing delay should not prejudice the substantial rights of parties by forcing them to go to trial without being able to fairly present their case." *Id.* We also noted that "[g]enerally, the denial of a continuance requested on the ground of ill health will be held reversible error only when the applicant suffered prejudice as a result of the denial." *Id.*

Schaub was eighty-nine years old at the time of trial and had a heart condition. J. Johnson was recovering from kidney surgery, which was complicated by cancer and severe high blood pressure. In order to appear in person at trial both Schaub and J. Johnson needed to travel significant distances—Schaub from Ketchikan and J. Johnson from Washington.

■ The superior court granted the first motion for a continuance by Ulmer and the Johnsons because of J. Johnson's illness.[6] A second continuance was requested because J. Johnson's scheduled surgery had been delayed, cancer was discovered, and J. Johnson was recovering slower than anticipated. In the interim between the superior court's initial grant of a continuance and J. Johnson's second motion for a continuance, Schaub fell and injured himself. As a result Schaub indicated that he would be unable to attend the trial scheduled for March 23, 1992.

---

4. The superior court stressed that Schaub was 89 years old and in poor health, and that he had traveled from Ketchikan to be present. The court stated that "considering Mr. Schaub's age and physical condition, along with the other factors ... it seems clear ... that the equities lie in favor of Mr. Schaub in this instance."

5. Alaska Civil Rule 40(e)(2) requires all motions for continuance to be filed at least five days before trial, except with permission from the court.

6. J. Johnson was admitted to the hospital for blood pressure problems. Tests taken at that time disclosed a tumor of the right kidney. J. Johnson was then scheduled for surgery in January 1992 with a "minimum" six-week post-operative convalescence.

Thus, at the time of the second motion for a continuance by Ulmer and the Johnsons, both parties were ill and had indicated that they would be unable to attend the March 23. Most significantly, Schaub did not oppose the second motion for a continuance.

We can find no basis in the record for the superior court's denial of the second motion for a continuance. Further, the record does not indicate any abuse of trial process by the attorney for Ulmer and the Johnsons. The second motion for a continuance represents a legitimate recalendaring request in light of J. Johnson's delayed recovery from surgery. As a result of the superior court's denial of the second motion for continuance, Ulmer and the Johnsons were seriously prejudiced in their ability to present their misrepresentation claim.[7] Thus we conclude that the superior court's denial of Ulmer and the Johnsons' second motion for a continuance constituted an abuse of discretion and was therefore error.[8]

III. *THE SUPERIOR COURT CORRECTLY DETERMINED THAT NO GENUINE ISSUE OF MATERIAL FACT EXISTED WITH RESPECT TO VALID CONSIDERATION FOR THE PROMISSORY NOTE.*

"When reviewing an appeal from summary judgment, we determine whether there was a genuine issue of material fact before the trial court, and whether the moving party was entitled to judgment on the law applicable to the established facts." *Crissey v. Alaska USA Fed. Credit Union,* 811 P.2d 1057, 1059 (Alaska 1991).

■ The superior court granted Schaub summary judgment on the question of whether valid consideration existed for the promissory note executed by J. Johnson and Ulmer. The promissory note reads, in relevant part:

FOR VALUE RECEIVED, John Johnson and Marjorie Ulmer promises [sic] to pay to the order of H. F. SCHAUB of Ketchikan, Alaska, Thirty–Six Thousand, Two Hundred–Fifty–Four Dollar [sic] ($36,254.00), lawful money of the United States of America with interest thereon at the rate of ten percent (10%) per annum, payable as follows: In full, including interest accruing from April 24, 1989, on or before forty-five (45) days from date.

The makers, sureties, guarantors, and endorsers hereof severally waive presentation for payment, notice of dishonor, protest and notice of protest.... In case suit or action is instituted to collect this note, or any portion thereof, I promise to pay, in addition to the statutory court costs, such attorneys' fees as the Court may adjudge reasonable, and further agree to pay, even if no suit or action is instituted thereon, such collection costs, and such sums as attorneys' fees, that the holder of this note may incur in the collection of this note, or any portion thereof, not exceeding fifteen percent (15%) of the amount due.

J. Johnson contends that the note is invalid for lack of consideration, since Schaub transferred the funds directly to First Bank of Ketchikan. Schaub responds that consideration was given in two forms: (1) payment by Schaub to the bank on behalf of J. Johnson and Ulmer; and (2) the contract for the sale of the ZENITH. The mortgage payments for the ZENITH in 1989 totaled $36,254.76. Schaub argued that he transmitted that amount directly to the bank because the loan's purpose was to meet the 1989 mort-

---

**7.** Friderici, the trial attorney for Ulmer and the Johnsons, stated: "I felt we were severely prejudiced by the inability to present Mr. Johnson in person. A voice over a telephone versus a live witness is a fatal conflict that I'm going to lose with the voice over the telephone." Friderici further commented to the court:

Dr. Brown was—I'm not sure what the right term is—upset is probably the charitable way to say it, as to this trial was going to kill him, and this was going to kill him whether he showed up in person or whether he talked over the telephone. I'm not going to kill my client, I don't believe I have to, that's why I moved for the continuance. And we're here today, I can't win without Mr. Johnson, the rest of it's a sham without Mr. Johnson. I'm going to lose, I recognize that.

**8.** This holding has made it unnecessary to determine whether the superior court abused its discretion in denying Ulmer and the Johnsons' third motion for a continuance of the trial.

gage payments.[9]

■ Consideration may consist of performance for or from a third party:

It matters not from whom the consideration moves or to whom it goes. If it is bargained for and given in exchange for the promise, the promise is not gratuitous.

Restatement (Second) of Contracts § 71 cmt. e (1981).[10] Schaub paid J. Johnson $36,254.76 in consideration for the promise to repay the money. That the money was actually transferred directly to First Bank of Ketchikan, a third party, does not negate the sufficiency of the consideration. J. Johnson received consideration, took possession of the vessel, and together with R. Johnson, signed an addendum to the original promissory note six months later. We hold that there is no genuine issue of material fact as to whether adequate consideration was given for the promissory note. Therefore, we affirm the superior court's grant of summary judgment on this issue.

IV. *THE SUPERIOR COURT ERRONEOUSLY DETERMINED THAT ROCKLYN JOHNSON WAS PERSONALLY LIABLE ON THE PROMISSORY NOTE.*

■ R. Johnson was not a party to the promissory note but she did sign an addendum:

THIS ADDENDUM shall be attached and become part of the existing personal note made by and between JOHN JOHNSON and MARJORY [sic] ULMER ... and HERB SCHAUB....

IN CONSIDERATION of Herb Schaub extending the terms of the original unsecured promissory note, John and Rocklyn Johnson agree to secure the promissory note.

WHEREAS, the original promissory note was signed by John Johnson and Marjory [sic] Ulmer on April 24, 1989 in Juneau, Alaska.

WHEREAS, the parties to this addendum hereby agree to the following provisions;

1. Interest accrued in the amount of $1,867.20 shall be paid to Herb Schaub by John Johnson and Rocklyn Johnson by November 10, 1989.

2. The promissory note in the amount of $36,254.00 shall be paid in full on or before December 1, 1989.

3. In the event the promissory note in the amount of $36,254.00 is not paid in full by December 1, 1989, then John and Rocklyn Johnson shall secure the promissory note with real property that has a value equal to or more than the promissory note or a Deed of Trust.

4. The security shall be transferred to Herb Schaub by December 15, 1989.

5. There are no other agreements to this addendum, either oral or written, between the parties except those set out within this addendum.

■ Summary judgment against R. Johnson as a maker of the note is proper only if the addendum binds her to joint and several liability for payment of the note.[11] As noted,

9. Schaub notes that he was not liable to First Bank of Ketchikan for this payment but that ASC was obligated on the mortgage. Schaub was an officer and shareholder of ASC and had guaranteed a portion of the mortgage payment; however, he was only obligated to make partial mortgage payments in the event ASC defaulted.

10. *See also John Deere Co. v. Broomfield*, 803 F.2d 408, 410 (8th Cir.1986) ("Payment made to third party at promisor's request constitutes consideration."); *Guinn v. Hollcombe*, 29 Ark.App. 206, 780 S.W.2d 30, 32 (1989) (consideration may move from promisor to third person); *Kennebunk Sav. Bank v. West*, 538 A.2d 303, 304 (Me.1988) (benefits to a third party may constitute adequate consideration, if intended by promisee); *Shea v. Begley*, 94 Or.App. 554, 766 P.2d

418, 420 (1988) (promises for benefit of third parties may be sufficient consideration).

11. R. Johnson's liability arises solely from the addendum executed on November 3, 1989, and not from the note. Under AS 45.03.401, a person cannot be liable on a negotiable instrument, such as the note, unless their signature appears on it.

Though not controlling authority, the former official comment of the Uniform Commercial Code analog to AS 45.03.401 states:
Nothing in this section is intended to prevent any liability arising apart from the instrument itself. The party who does not sign may still be liable on the original obligation for which the instrument was given.... He may of course be liable under any separate writing.

summary judgment is appropriate when there is no genuine issue of material fact and when the moving party is entitled to judgment as a matter of law. *State, Dep't of Corrections v. Welch*, 805 P.2d 979, 981 (Alaska 1991).

In opposing Schaub's motion for summary judgment, R. Johnson failed to present any evidence regarding her potential liability under the note and addendum. Nor did R. Johnson file a statement of genuine issues of material fact with respect to her personal liability under the note and addendum.

However, Schaub is not entitled to summary judgment against R. Johnson solely on the basis that she failed to file a statement of genuine issues of material fact with regard to her personal liability, or to offer any evidence which would create a genuine issue of material fact. *See Bauman v. State, Div. of Family & Youth Servs.*, 768 P.2d 1097, 1099 (Alaska 1989). It was incumbent upon Schaub to demonstrate in addition to the absence of any genuine issue of material fact that, as a matter of law, R. Johnson is jointly and severally liable on the note and addendum. *See Welch*, 805 P.2d at 981.[12]

We conclude that the addendum is ambiguous because it is reasonably subject to differing interpretations as to whether R. Johnson is liable as a maker for payment of the promissory note.[13] *See O'Neill Investigations, Inc. v. Illinois Employers Ins. of Wausau*, 636 P.2d 1170, 1174 (Alaska 1981) (contract ambiguous where subject to differing interpretations); *State v. Fairbanks N. Star Borough Sch. Dist.*, 621 P.2d 1329, 1331 n. 4 (Alaska 1981). The addendum's ambiguity stems from paragraph two, which states that "[t]he promissory note in the amount of $36,-

254.00 shall be paid in full on or before December 1, 1989." R. Johnson argues that she is obligated to secure the note with real property and is liable only for payment of interest in the amount of $1,867.20, since paragraph two does not expressly make her liable for payment of the note (in contrast to the express provisions relating to interest and security, which explicitly name R. Johnson). Schaub argues that R. Johnson agreed not only to secure the note, but also to pay the note on or before December 1, 1989 based on paragraph two. Under Schaub's view, R. Johnson is jointly and severally liable with J. Johnson and Ulmer for a cash judgment.

Because the addendum is subject to differing interpretations, we conclude that the superior court erred in ruling as a matter of law that Schaub is entitled to summary judgment against R. Johnson as a maker of the note. On this issue we must reverse the summary judgment against R. Johnson, and remand to the superior court for further proceedings. On remand the superior court should determine whether the extrinsic evidence is conflicting, and generally proceed in accordance with the following methodology:

> The question of the meaning of a written contract, including a review of the extrinsic evidence to determine whether any of the extrinsic evidence is conflicting, is a preliminary question for the court. Where there is conflicting extrinsic evidence the court, rather than the jury, must nonetheless decide the question of meaning except where the written language, read in context, is reasonably susceptible to both asserted meanings.

Former U.C.C. § 3–401 cmt. 1.

Thus, while R. Johnson is not liable under the note, she still may be liable to Schaub based on the addendum.

12. Generally, interpretation of contracts such as the addendum presents a question of law for courts to decide. *Zuelsdorf v. University of Alaska*, 794 P.2d 932, 933 (Alaska 1990). The court's duty is to ascertain and give effect to the parties' reasonable intent. *Western Pioneer, Inc. v. Harbor Enter., Inc.*, 818 P.2d 654, 656 (Alaska 1991). The court looks first at the addendum itself. *Stepanov v. Homer Elec. Ass'n, Inc.*, 814 P.2d

731, 734 (Alaska 1991); *Norton v. Herron*, 677 P.2d 877, 880 (Alaska 1984). In determining intent, we also examine relevant extrinsic evidence, *Stepanov*, 814 P.2d at 734; *Norton*, 677 P.2d at 880, and case law. *Jensen v. Ramras*, 792 P.2d 668, 670 (Alaska 1990). However, the only relevant extrinsic evidence, Schaub's affidavit, merely states that the addendum guaranteed the note.

13. It is clear that R. Johnson unambiguously agreed to pay $1,867.20 interest and to secure the note with real property.

*Alaska Diversified Contractors, Inc. v. Lower Kuskokwim Sch. Dist.,* 778 P.2d 581, 584 (Alaska 1989), *cert. denied,* 493 U.S. 1022, 110 S.Ct. 725, 107 L.Ed.2d 744 (1990).

However, it is clear that R. Johnson promised that the note "shall be paid in full" and promised that if the note was not paid in full she would secure the promissory note with real property or a deed of trust of equal or greater value than the amount outstanding. R. Johnson is therefore liable as a guarantor of the note. If an execution is returned unsatisfied against the makers of the note, R. Johnson may be ordered to post security in accordance with the terms of her guarantee. If she fails in that obligation, a money judgment for the amount outstanding may be entered against her. *See* AS 45.03.-419(d); former AS 45.03.416(b)-(c).

## V. CONCLUSION

We hold that the superior court's denial of Ulmer and the Johnsons' second motion for continuance of the March 23, 1992 trial date constituted an abuse of discretion. Therefore, the matter is REMANDED with directions to VACATE the judgments previously entered and to reset the matter for trial. The superior court's grant of summary judgment as to the existence of valid legal consideration for the promissory note is AFFIRMED. The superior court's grant of summary judgment against Rocklyn Johnson as a maker of the note is REVERSED; however, the court should enter summary judgment against Rocklyn Johnson as a guarantor.