Brad C. VAN ALFEN, Appellant,

v.

Marianne S. VAN ALFEN, Appellee.

No. S–6302.

Supreme Court of Alaska.

Jan. 26, 1996.

Dennis P. Cummings, Anchorage, for Appellant.

Robin A. Taylor, Law Office of Robin A. Taylor, Anchorage, for Appellee.

Before MOORE, C.J., RABINOWITZ, MATTHEWS, COMPTON and EASTAUGH, JJ.

*OPINION*

EASTAUGH, Justice.

I. *INTRODUCTION*

This appeal concerns the effective date of increased child support payments ordered during enforcement of a dissolution agreement and decree. In December 1993 Marianne Van Alfen (now Child) sought increased child support from her former husband, Brad Van Alfen, by moving to enforce their dissolution agreement. The

superior court ordered Brad to pay increased child support effective February 1993, and awarded attorney's fees and costs to Marianne. We remand for entry of a corrected order making the increased rate effective September 1, 1993. We vacate the award of attorney's fees and costs and remand to permit the superior court to reconsider this issue in light of the more limited relief obtained by Marianne.

## II. *FACTS AND PROCEEDINGS*

Brad and Marianne filed a Petition for Dissolution of Marriage in October of 1991; the court issued a decree of Dissolution of Marriage in November. The dissolution petition, which was incorporated by reference into the court's dissolution decree, provided:

> It is agreed between both parties that father will currently pay $205.00 per month as child support. Yearly reviews on Sept. 1 of each year will be made to make adjustments if income has increased. When he graduates and obtains new employment at a higher rate of pay, he will begin paying the 27% that is required.

At the time of the dissolution, Brad was a student and only able to work part-time. Marianne claims that she agreed at the time of dissolution to accept the lower child support amount resulting from Brad's underemployment because she believed that the children would eventually benefit from higher child support after their father completed his doctorate, and that the children's expenses would be higher as they grew older. Under the agreement, child support would be paid through the Child Support Enforcement Division, State of Alaska (CSED), and CSED would conduct the yearly reviews contemplated by Brad and Marianne's agreement. CSED first reviewed Brad's income in September or October 1992. CSED apparently did not complete this review until July 1993.[1]

In December 1993 Marianne filed a Motion to Enforce Dissolution Decree. Marianne alleged in her accompanying affidavit that as early as January 1993, Brad had left school and begun full-time, lucrative employment with WordPerfect Corporation. Marianne informed the court that the dissolution agreement provided that Brad should pay the twenty-seven percent required when he "graduat[ed] and obtain[ed] new employment," and asked the court to verify Brad's income and correct his 1993 child support obligation.

In response, Brad did not dispute that he had begun a new job, but asserted that he remained enrolled at Brigham Young University (BYU) in Utah. Brad submitted a letter from his BYU department chair stating that Brad was still enrolled. Brad further argued that he was not attempting to circumvent his obligation to pay according to the dissolution agreement, and that "when CSED does its annual evaluation there will be a modification." Brad asserted that he had been paying at the twenty-seven percent level at all times under the parties' agreement.

The superior court found that Brad was not in compliance with the parties' dissolution decree. The court noted that the decree provides that when Brad graduated and obtained new employment at a higher rate of pay, he was to begin paying twenty-seven percent of his income in child support. The court concluded that this provision of Brad and Marianne's agreement

> emphasize[s] the increase in his income, not his graduation from college. Mr. Van Alfen could become a career student and argue, on that basis, that his child support should not be increased, except perhaps in the review in September.

The court then increased Brad's child support obligation to $657.15 per month. The court noted that Brad had not specifically indicated when he began working at WordPerfect, and thus assumed Marianne's allegation that his employment began in January 1993 to be true. The court then stated that

> [t]he child support obligation is modified retroactively to February 1, 1993 on the basis of the dissolution language that Mr. Van Alfen would begin making payments

---

1. According to Brad, the review resulted in a decrease in child support of $3.00 per month "pursuant to the 27 percent (27%) rate, mandated by Alaska Civil Rule 90.3." Marianne states that CSED ruled that Brad's 1992 child support should remain unchanged.

of 27% when he was employed at a higher rate of pay.

The court also ordered that Brad pay Marianne's attorney's fees and costs of $565.02. The superior court denied Brad's motion for reconsideration. This appeal followed.

## III. *DISCUSSION*

■■■ Brad argues that the order increasing his child support obligation violates Alaska Civil Rule 90.3(h)(2), which prohibits retroactive modification of child support.[2] Marianne argues that the language of the dissolution agreement—"when [Brad] graduates and obtains new employment at a higher rate of pay, he will begin paying at 27% that is required"—is a self-executing provision, analogous to the provision at issue in *Karpuleon v. Karpuleon*, 881 P.2d 318 (Alaska 1994).[3] Marianne argues that this provision was to take effect when Brad was no longer an "underemployed graduate student." Thus, Marianne argues, when Brad began working for WordPerfect, although he may have remained a graduate student, he was no longer underemployed and consequently was automatically required under the parties' agreement to begin paying twen-

ty-seven percent. Under Marianne's analysis, pursuant to *Karpuleon*, the superior court's order was not a retroactive support modification but merely enforced the obligation contemplated in the parties' written agreement.[4]

■■■ The pertinent language of the dissolution agreement and decree is quoted in Part II, *supra*.[5]

The agreement contemplated two different grounds for modifying the child support obligation without judicial intervention. Both grounds permitted self-executing increases.

The first ground contemplated increases following the annual reviews to be conducted each September 1. The second ground contemplated increases upon the happening of two events: Brad's graduation and his employment in a new position at a higher rate of pay. The court relied on the second ground when it ordered the increase effective February 1993. The plain terms of the agreement, however, required the occurrence of both events for the second ground to apply. There is no genuine dispute in this case that Brad had not in fact graduated. Conse-

---

**2.** Alaska Civil Rule 90.3(h)(2) provides:

> Child support arrearages may not be modified retroactively. A modification which is effective on or after the date that a motion for modification is served on the opposing party is not considered a retroactive modification.

**3.** In *Karpuleon* the parties entered into a written agreement which provided that if the children moved back in with their mother, their father would begin to pay child support to the mother. *Karpuleon*, 881 P.2d at 319. In September 1991 the parties' younger child moved in with his mother. *Id.* In March 1992 the mother filed a motion to modify child custody and support in light of the child's new residence. *Id.* The superior court held that the father owed the mother child support as of September 1991. *Id.* We affirmed the superior court's determination, holding that the parties' agreement contemplated a future shifting of child support obligations and that our decision did not cause a retroactive modification of the support obligation but rather merely enforced the father's obligation under the agreement. *Id.* at 321–22. We reasoned that the details of the agreement were sufficiently clear that the parties should be held to the agreement, and that because the agreement was in writing and the date the child changed residence was

clear, policy reasons weighed in favor of enforcing the agreement. *Id.* at 321.

**4.** The interpretation of the parties' dissolution agreement is a question of law. *Cf. Johnson v. Schaub*, 867 P.2d 812, 818 n. 12 (Alaska 1994) (contract interpretation is generally a question of law). We exercise our independent judgment in reviewing questions of law. *Beesley v. Van Doren*, 873 P.2d 1280, 1281 (Alaska 1994).

> We review a superior court's award of attorney's fees under Alaska Civil Rule 82 for abuse of discretion. *Lowe v. Lowe*, 817 P.2d 453, 460 (Alaska 1991).

**5.** Our primary goal in contract interpretation is to give effect to the parties' reasonable expectations. *Aviation Associates v. TEMSCO Helicopters*, 881 P.2d 1127, 1130 n. 4 (Alaska 1994). We discern the parties' reasonable expectations by looking first at the written agreement and also extrinsic evidence regarding the parties' intent at the time the contract was made. *Fairbanks North Star Borough v. Tundra Tours, Inc.*, 719 P.2d 1020, 1024 (Alaska 1986). Marianne presented no extrinsic evidence indicating that the clear language of the parties' dissolution agreement should not be given effect. Nor did the superior court state that it was relying on any extrinsic evidence.

quently, one of the two conditions for automatic modification under the second ground was not met. It was error to rely on that ground to increase Brad's child support obligation.

■ Although an increase under the second ground was inappropriate, an increase under the first was required. If, as required by the agreement, Brad had disclosed on September 1, 1993, the pertinent information about his change in employment and increase in income, it would have become apparent on that date that the agreement obliged him to pay more child support. Making the increase effective September 1, 1993, when the information was to have been provided, consequently carries out the parties' apparent intentions when they entered into the agreement.[6]

We hold that although the dissolution agreement permitted self-executing increases in child support for specified reasons, it did not permit imposing an increase effective February 1993, as ordered by the trial court.

## IV. CONCLUSION

Although it was error to rely on the second ground to order increased child support and thus to make the increase effective as of February 1993, the increase required under the annual review provision should have been effective as of September 1993. We consequently REMAND for entry of a corrected order awarding child support at the increased rate beginning September 1, 1993, rather than February 1, 1993. We also VACATE Marianne's award of attorney's fees and costs and REMAND to allow reconsideration of the fees and costs issue because Marianne's relief is more limited than the superior court contemplated when it entered its award of costs and fees.

RABINOWITZ, Justice, dissenting.

The superior court's dissolution decree provided in part:

It is agreed between the parties that father will currently pay $205.00 per month as child support. Yearly reviews on September 1 of each year will be made to make adjustments if income has increased. When he graduates and obtains new employment at a higher rate of pay, he will begin paying the 27% that is required.

In ruling on Marianne's Motion to Enforce Dissolution Decree, the superior court modified Brad's support obligation retroactively to February 1, 1993 on the rationale that the above quoted text of the dissolution decree required Brad to begin making payments "of 27% when he was employed at a higher rate of pay." More specifically, the superior court concluded that the dissolution decree

emphasize[s] the increase in his income, not his graduation from college. Mr. Van Alfen could become a career student and argue, on that basis, that his child support should not be increased, except perhaps in the review in September.

Although only a six-month differential is implicated as between the superior court's February effective date and the majority's holding that the increase in child support should have been made effective as of September 1993, I cannot agree with the majority's interpretation of the self-executing provisions of the dissolution decree.

The relevant portion of the superior court's decree states: "When [Brad] graduates and obtains new employment at a higher rate of pay, he will begin paying the 27% that is required." The majority reads this as imposing two conditions precedent to the immediate increase of Brad's child support obligation: graduation and the obtaining of new employment at a higher rate of pay. In my view, "[w]hen he graduates" was simply intended as a description of the likely time when Brad would fulfil the condition—obtaining of new employment at a higher rate of pay.

---

6. Brad does not claim that no modification is in order, but instead argues that Rule 90.3(h)(2) bars any increase effective before December 29, 1993, when Marianne filed her motion to enforce the agreement. If it were not for the agreement and decree providing for self-executing increases

in child support, Brad would be correct. Because the parties agreed on methods for self-executing increases, however, Rule 90.3(h)(2) is inapplicable to an increase under either method. It consequently does not prohibit an effective date of September 1, 1993.

Although the questioned language of the decree (which incorporated the parties' agreement) is somewhat opaque, I conclude that the superior court correctly construed the decree. As the superior court noted, a contrary interpretation could lead to Brad's remaining a nominal student, or dropping out of school without a degree, while taking a lucrative job and thus escaping any child support increase until the September CSED review.