**J. Mitchell JOYNER, Appellant and Cross–Appellee,**

v.

**Vincent VITALE, a Professional Corporation, and Vincent P. Vitale, Individually, Appellees and Cross–Appellants.**

Nos. S–6692, S–6712.

Supreme Court of Alaska.

Nov. 22, 1996.

Susan D. Mack, James T. Stanley Corp., P.C., Anchorage, for Appellant and Cross–Appellee.

Cabot Christianson, Bundy & Christianson, Anchorage, for Appellees and Cross–Appellants.

Before COMPTON, C.J., and RABINOWITZ, MATTHEWS, EASTAUGH and FABE, JJ.

## OPINION

FABE, Justice.

### I. INTRODUCTION

J. Mitchell Joyner brought an action to remove the deed of trust from a property that he had purchased. The superior court determined that the encumbrance remained and that Joyner continued to owe its beneficiary, Vincent Vitale. Joyner appeals this decision. Vitale cross-appeals the court's denial of his request for actual attorney's fees. We affirm the superior court's decisions granting partial summary judgment and judgment in favor of Vitale after trial. We reverse the trial court's award of partial attorney's fees and remand for an award of full attorney's fees.

## II. *FACTS AND PROCEEDINGS*

Walter Karpinia, Sr. (Karpinia) owned a home and land in Eagle River that were encumbered by a deed of trust. On May 10, 1984, in exchange for services, Karpinia gave to his attorney, Vincent Vitale, a "demand promissory note" for $14,101.56 at 12% interest. A second deed of trust on Karpinia's property secured the Vitale promissory note.

The second trust deed included a "dragnet clause," allowing Vitale to add subsequent charges to the debt. This clause provided that "[t]his Deed of Trust is also given for the purpose of securing full performance by the Trustor of all terms and conditions of that certain Contract for Legal Services, of even date herewith, entered into between Trustor and Beneficiary." The deed also required Karpinia "to pay all costs and expenses, including ... attorney's fees in a reasonable sum ... in any suit brought by [Vitale] to foreclose this Deed." The promissory note contained a similar attorney's fees provision.

Karpinia retained Vitale until November 1984. Vitale later stated that as of October 31, 1984 Karpinia owed him a total of $18,026, including the original $14,101.56, plus "several thousand dollars" of post-note services, and post-note interest.

Karpinia never paid his debt to Vitale. In July 1991, Karpinia died, and his estate listed the Eagle River property for sale. Walter Karpinia, Jr. (Karpinia, Jr.), the executor of his father's estate, did not challenge the estate's obligation to Vitale and stated that the debt was "in my opinion in all respects valid."

Peter Ginder, attorney for the Karpinia estate, asserted in a November 8, 1991 letter to Vitale that the estate's obligation to Vitale on the second deed of trust was approximately $40,000. This figure was based on the $18,026 obligation as of October 31, 1984, plus 12% interest compounded annually, rounded to the nearest $1,000.[1] Vitale "agreed to the $40,000 figure." Defects in the home made a cash purchase impossible, so Ginder proposed that Vitale accept an assumption of his debt by the purchaser of the property.

J. Mitchell Joyner, an attorney, became interested in buying the property. Although Joyner determined before he bought the property that the Vitale debt might be time-barred and concluded that he might not have to honor that debt, Joyner did not tell the sellers this. In fact, Karpinia, Jr. understood from Joyner's oral assurances, as well as from the contracts Joyner signed, that Joyner would satisfy the. estate's obligation to Vitale if he purchased the house. This point was important to Karpinia, Jr. and the other heirs because "the estate was legally and more importantly morally indebted to Vince [Vitale] for his services on behalf of my father." At trial, Karpinia, Jr. testified:

> I know that Vince provided a service to my father, which I couldn't do or neither could any of the kids, and the estate—my father should have paid Vince, so we're obligated to pay him. Whatever funds I receive out of this will go to Vince, because he—he deserves to be paid.

Joyner agreed in an earnest money agreement to buy the property for $130,000 and to "assume Seller's existing loan(s) in the approximate amount of $98,000." Crossed-out figures on the agreement suggest that the $98,000 represented a total obligation of $103,000, which had been reduced by a $5,000 cash payment. The initial total of $103,000 was comprised of $63,000 on the first deed of trust and $40,000 on the Vitale deed of trust.

Joyner and Karpinia, Jr. signed an "escrow instructions addendum" on January 2, 1992 that stated, "Buyer to assume Law Office of Vincent Vitale loan # in the amount of $40,000.00. Interest shall accrue from 01/17/92 and be paid at the rate of 5% per annum. All due and payable 7/15/92." Joyner also signed a Department of Housing and Urban Development settlement statement, stating that his $130,000 purchase price included $40,000 "assumption balance" for the Vitale obligation.

Vitale drafted, and Joyner refused to sign, a promissory note stating that Joyner owed Vitale $40,000 plus 5% interest. Joyner said he refused to sign this note because he did not want to create any new obligations.

---

1. The value of $18,026 at 12% interest com- pounded annually for seven years is $39,849.74.

On January 17, 1992, Joyner purchased the property. He and Karpinia, Jr. executed a statutory warranty deed. The deed stated that the conveyance was

> FURTHER SUBJECT TO that certain deed of trust, including terms and conditions thereof, to secure an indebtedness, and more fully described below:

> Trustor: Walter Karpinia
> Trustee: Alaska Title Guarantee Agency, Inc.
> Beneficiary: Law Offices of Vincent Vitale, a professional corporation
> Amount: $14,101.56
> Dated: May 10, 1984
> Recorded: May 11, 1984
> Book/Page: 1094/325

> WHICH DEED OF TRUST AND THE NOTE IT SECURES THE GRANTEE HERETO ASSUMES AND AGREES TO PAY AND TO HOLD HARMLESS THE GRANTOR THEREFROM.

After he purchased the property, Joyner filed an action[2] seeking to remove the deed of trust from the title because the six-year statute of limitations had expired or, in the alternative, to redetermine the amount owed because $40,000 overstated that amount.

In January 1993 the superior court issued a preliminary injunction prohibiting Vitale from foreclosing on the deed of trust. On March 30, 1994, Superior Court Judge Mark Rowland entered partial summary judgment on three issues. Judge Rowland found that the deed of trust was enforceable against Joyner, since Joyner had acknowledged the debt at the time of purchase; that the 12% interest should be calculated as simple interest; and that the dragnet clause was enforceable. Issues left for trial were whether the preliminary injunction should remain in effect, the amount of the obligation under the dragnet clause, and attorney's fees.

At trial, Superior Court Judge Milton Souter, to whom the case had been transferred, analyzed the obligation in a different manner. Judge Souter based Vitale's right to recover from Joyner not on the Vitale–Karpinia deed of trust but on the Karpinia–Joyner purchase contract and Vitale's third-party beneficiary status under that contract. Particularly significant to the court were Joyner's expressed intentions to buy the property for $130,000 and to value the debt unconditionally at $40,000. The court held that Joyner owed Vitale $40,000, that the property secured the debt, and that Vitale could foreclose on the deed of trust.

The court awarded Vitale, as the prevailing party, $7,042.24 in attorney's fees under Alaska Civil Rule 82. At trial and on motion for reconsideration, Vitale unsuccessfully sought actual attorney's fees of $19,383 under the provisions for full reasonable attorney's fees in the deed of trust and promissory note.

Joyner appeals, asserting that the trial court erred in finding him obligated to Vitale for $40,000. Vitale cross-appeals, seeking compensation from Joyner for full attorney's fees.

### III. DISCUSSION[3]

#### A. Joyner Created a New Agreement, with Vitale as a Third–Party Beneficiary.

■ Judge Souter found that a valid contract existed between Joyner and the Karpinia estate, that Vitale was a third-party beneficiary of that contract, and that the contract required Joyner to pay Vitale $40,000, unconditionally, at 5% interest. His factual findings in this matter find ample support in the record, and his decision is correct as a matter of law.

■ A valid purchase contract existed between Joyner and the Karpinia estate, with consideration received by both sides. "Consideration may consist of performance for ... a third party." *Johnson v. Schaub,* 867 P.2d 812, 817 (Alaska 1994).

2. The complaint was originally filed by Barton M. Tiernan, a friend of Joyner whom Vitale describes as a "straw man." At the parties' stipulation, Joyner was later substituted for Tiernan.

3. We review findings of fact under the clearly erroneous standard. *T. Ferguson Const., Inc. v.*

*Sealaska Corp.,* 820 P.2d 1058 (Alaska 1991). We review conclusions of law under the substitution of judgment standard. *State, Dep't of Natural Resources v. Transamerica Premier Ins. Co.,* 856 P.2d 766 (Alaska 1993).

The statutory warranty deed expressly provided that the Karpinia–Joyner sale was subject to the Vitale deed of trust and that Joyner assumed the obligation on the deed of trust. The purchase deed was consistent with the language of the pre-deed agreements, which included the earnest money agreement, the escrow instructions addendum, and the settlement sheet. Walter Karpinia, Jr. also testified that Joyner orally agreed to satisfy the debt to Vitale. Each of the three pre-deed agreements indicates that Joyner agreed to value the obligation to Vitale that he assumed at $40,000.

■ When a purchaser assumes a mortgage, under the most common view, the mortgagee is a third-party beneficiary of the contract between mortgagor and purchaser. Grant S. Nelson & Dale A. Whitman, *Real Estate Finance Law* 319 (3d ed. 1993); 4 *Corbin on Contracts* § 796 at 146 (1951); John D. Calamari & Joseph M. Perillo, *The Law of Contracts* 703 (3d ed. 1987). A mortgagee may recover, as a third-party beneficiary of the assumption agreement, from a purchaser who assumed the mortgage. *Cleveland Trust Co. v. Elbrecht*, 137 Ohio St. 358, 30 N.E.2d 433, 435–36 (1940); *Restatement (Second) of Contracts*, § 304 & illus. 2 (1981); 2 *Williston on Contracts* § 382 at 1024 (3d ed. 1959). As a third-party beneficiary of the Karpinia–Joyner contract, Vitale may recover from Joyner.

■ Furthermore, a third-party "beneficiary's right against the promisor is not subject to claims and defenses of the promisee against the beneficiary unless the contract so provides." *Restatement (Second) of Contracts* § 309, cmt. c & illus. 11 (1981); *see also* Williston, *supra*, § 386A at 1044–45. Under this rule, and because the Karpinia–Joyner contract did not provide for Joyner to invoke Karpinia's defenses against Vitale, Joyner may not do so. Therefore, Joyner may not raise defenses, including those under the statute of limitations, that Karpinia might have asserted against Vitale.

Under the purchase and assumption agreements, Joyner promised that he would honor the Karpinia estate's debt to Vitale. He agreed to pay Vitale $40,000 at 5% interest. Karpinia's attorney, executor and heirs believed that this payment would satisfy the Karpinia estate's obligation to Vitale, as did Vitale. Joyner kept private his doubts about the validity and amount of that obligation. The law simply requires Joyner to honor his contractual promise. Therefore, Joyner is obligated to pay Vitale $40,000 at 5% interest.

### B. *Vitale is Entitled to Full Reasonable Attorney's Fees.*

The trial court held that because Vitale could recover from Joyner as a third-party beneficiary of the Karpinia–Joyner contract, the attorney's fee provisions in the original deed of trust and promissory note were inapplicable. The court granted Vitale partial attorney's fees under Rule 82 instead of full attorney's fees under the terms of the original agreements. Vitale claims that this holding was erroneous.

■ Joyner took the property subject to the deed of trust terms which provided security for the debt to Vitale which Joyner promised to pay in an agreed amount. Joyner's contract with Karpinia, therefore, incorporated the rights and obligations of the Vitale–Karpinia deed of trust. Because the Karpinia–Joyner contract did not revoke the attorney's fee provisions of the deed of trust, those attorney's fee provisions bind Joyner.[4] We reverse the superior court's award of attorney's fees under Rule 82 and remand for an award of full reasonable fees under the terms of the Vitale–Karpinia deed of trust.

## IV. CONCLUSION

Because Vitale was a third-party beneficiary of a valid contract between Joyner and the Karpinia estate, Joyner may not challenge the validity of the obligation or claim to owe an amount other than $40,000. We AFFIRM the superior court's substantive con-

---

4. Because Joyner may not reduce his obligations under the Karpinia–Joyner purchase and assumption contract by asserting that the statute of limitations period expired before he assumed Karpinia's obligations under the Vitale–Karpinia deed of trust and promissory note, the statute of limitations does not bar Vitale from collecting full attorney's fees.

clusion. We REVERSE its attorney's fees award, and REMAND for an award to Vitale of reasonable attorney's fees under his agreements with Karpinia.