OPINION
 

 EASTAUGH, Justice.
 

 I.
 
 INTRODUCTION
 

 When Randy and Lesley Knutson dissolved their marriage and divided their property in 1988, they agreed to postpone selling the marital residence until its market value rose. In 1997 Randy sought judicial authority to buy out Lesley’s share in the still-unsold house. The superior court found the parties’ agreement to be ambiguous; interpreting the agreement, it ordered Randy to pay Lesley $4,301.50 to buy out her equity interest. The superior court correctly found that the agreement required division of the parties’ equity, but it was error to implicitly fiijd that the parties did not intend to share the benefits of the post-dissolution reduction of their mortgage debt. We remand for recalculation of the value of Lesley’s interest to correct that error. It was also error to fail to account for mortgage assistance Randy received that increased the parties’ mortgage debt by about $7,900. But it was not error to credit Randy with twenty percent of his post-dissolution home improvement expenses given evidence that the improvements might maintain or increase the value of the house.
 

 II.
 
 FACTS AND PROCEEDINGS
 

 Randy Thomas Knutson and Lesley Ann Knutson (now Logue) married in 1974. In late 1987 they petitioned for dissolution of their marriage. Neither was represented by counsel.
 

 Their petition incorporated an amended agreement concerning disposition of their Eagle River marital residence. They had purchased it for $123,440. When they petitioned for dissolution, its market value was about $104,700, and the mortgage balance was about $117,000. Because the house then had a “negative equity,” they decided to wait for the housing market to improve before selling it. Their amended dissolution agreement added the following term: “Husband will .occupy the house and pay its mortgage and utilities until it sells, whereupon both parties shall equally split either the profits or debt.” They also agreed that Randy would receive all household furniture. Superior Court Judge Peter A. Michalski granted the petition in early 1988.
 

 With Lesley’s approval, Randy reorganized the mortgage debt in January 1989. The reorganization increased the term from sixteen to thirty years, at the original interest rate. At the same time Randy also received a twenty-four-month subsidy of his mortgage payments through a homeowner’s assistance plan. The subsidy added $6,615.67 to the mortgage balance and was to be amortized over the life of the reorganized loan. The reorganization also paid the $1,293.25 January mortgage payment, and increased the new mortgage balance by that amount. Lesley later testified that she had not known of or agreed to the subsidy; Randy did not claim that she had. Lesley remained jointly liable with Randy on the reorganized mortgage. As a result of the 1989 reorganization, the mortgage balance rose from $112,931.81 to $121,698.02.
 

 Randy tried to refinance the mortgage in 1994 to take advantage of lower interest rates. According to Randy, Lesley withheld her approval, and Randy could not refinance. Randy contends that he lost the chance to save more than $80,000 over the term of the loan because Lesley blocked the refinancing, although no admissible evidence established that her alleged refusal caused measurable financial loss. Lesley denied that she had refused to cooperate.
 

 In January 1997 Randy moved under Alaska Civil Rule 60(b) for relief from the property settlement agreement incorporated into the dissolution decree; he alleged that he feared Lesley would stymie all future refinancing efforts. He asked the court to modify the dissolution decree so that he could “buy out” Lesley’s interest in the house.
 
 *599
 
 Lesley did not object to a buyout, but disagreed with Randy’s proposed method for calculating the buyout price.
 

 The parties exchanged memoranda and testified at a hearing before Superior Court Judge Sen K. Tan. They offered conflicting interpretations of their agreement. Randy contended that the parties intended to divide equally any “profit,” which he defined as the value of the house at the time of sale minus the cost of sale, the original purchase price, the original closing costs, the costs of pre-dissolution improvements, and the increased value he attributed to post-dissolution improvements. Randy calculated that a hypothetical sale of the house at fair market value in 1997 would result in a loss of $9,374.17.
 
 [1]
 
 Although his motion did not expressly say so, it implied that Lesley should pay him for half of this hypothetical loss.
 

 Lesley contended that the parties intended to divide equally the “equity” in the property, which she defined as the value of the house at the time of the buyout ($127,500) less the mortgage balance then owed ($113,043.77). She concluded that her equity interest was half of $14,456.23. Lesley also argued that Randy’s 1989
 
 mortgage
 
 reorganization entitled her to a credit of $3,954.46, on her theory that Randy had reduced the parties’ equity in the house by obtaining the mortgage subsidy under the state homeowner’s assistance plan and the payment of the January 1989 mortgage installment. She contended that Randy’s proposed buyout did not warrant Rule 60(b) relief, but that the court simply needed to determine the intent of the parties at the time of the dissolution agreement and make findings as to each party’s financial interest in the home.
 

 The superior court declined to grant Rule 60(b) relief to Randy, but “clarif[ied] the ambiguous terms of the property settlement.” It rejected each party’s interpretation of the agreement; it stated that Randy’s calculation deprived Lesley of her share of the equity in the house at. the time of dissolution, whereas Lesley’s calculation allowed her to “reap a windfall” from Randy’s contributions to the equity in the form of post-dissolution improvements and mortgage payments. To determine Lesley’s equity interest, the court calculated what part of the increased value was attributable to market conditions, and what part was attributable to Randy’s post-dissolution contributions. The court therefore made the following calculation:
 

 Sale price $127,500.00
 

 Mortgage debt at time of dissolution -$117,000.00
 

 Post-dissolution addition to value -$ 1,897.00
 

 $ 8,603.00
 

 The court concluded from this calculation that $8,603 of the market value was attributable to equity jointly contributed before the dissolution and to the jointly shared increase in value due to improved market conditions. The court found that the remaining increases in equity resulted from Randy’s post-dissolution improvements and mortgage payments. The court ordered Randy to pay Lesley half of the increase attributable to the agreement and pre-dissolution equity contribution, $4,301.50, to obtain her interest in the property.
 

 Lesley appeals.
 

 III.
 
 DISCUSSION
 

 A.
 
 Standard of Review
 

 The interpretation of the parties’ dissolution agreement is a question of law.
 
 [2]
 
 We exercise our independent judgment in reviewing questions of law.
 
 [3]
 

 We review factual findings for clear error.
 
 [4]
 
 It is the function of the trial court,
 
 *600
 
 not of this court, to judge witnesses’ credibility and to weigh conflicting evidence.
 
 [5]
 

 B.
 
 Did the Superior Court Have Authority to Interpret the Agreement?
 

 Lesley argues that the superior court had no authority to modify the decree by changing the terms of the parties’ agreement. Lesley agreed in the superior court and also agrees on appeal that the superior court had authority to interpret the agreement to determine the parties’ contracting intentions. Her argument about the court’s authority really translates into a claim that the superior court interpreted the parties’ intentions in a way that modified their agreement, even though the superior court denied Randy’s motion for Rule 60(b) relief.
 

 The approach adopted by the superior court — interpreting the agreement and determining the parties’ contracting intentions — was legally appropriate, acceptable to both parties, and factually warranted. Our inquiry therefore turns to the question whether the court erred in interpreting the agreement and determining and enforcing the parties’ intentions.
 

 C.
 
 Was It Error to Calculate Equity without Including Post-Dissolution Mortgage Reductions?
 

 Lesley argues that her interest in the house was worth $11,182.67, not $4,301.50 as found by the superior court. She attributes the difference to several alleged errors. Two of these alleged errors — giving her no share of post-dissolution reductions in the mortgage balance and failing to divide Randy’s “equity withdrawal” — arise directly out of the way the superior court calculated the parties’ equitable interests.
 

 A financial agreement entered into in connection with a dissolution proceeding is a contract subject to interpretation under contract principles.
 
 [6]
 
 “The goal in interpreting a contract is to give effect to the reasonable expectations of the parties. These expectations are determined by reviewing the language of any disputed provisions, other provisions, relevant extrinsic evidence, and case law interpreting similar provisions.”
 
 [7]
 

 The superior court first determined that the parties’ ambiguous agreement to split the “profits or debt” was intended to require division of their “equity.”
 
 [8]
 
 It found that the parties intended to split increases in the home’s market value, but that the agreement did not address equity increases attributable to reduction of the mortgage and to improvements. Reasoning that allowing Lesley to share in post-dissolution equity increases not attributable to the improving real estate market would give her a windfall, the court subtracted the mortgage debt measured at the time of the 1988 dissolution from the market value measured at the time of the 1997 buyout, and (after a $1,897 adjustment discussed in Part III.E) split the $8,603 difference in half to obtain Lesley’s equitable share.
 

 Lesley argues that it was error to subtract the 1988 mortgage balance, instead of the 1997 balance, from the 1997 sale price. We agree. Because the parties agreed to delay selling the house to allow its market value to rise and agreed to divide the equity when the house finally sold, the time of sale is presumptively the correct time to calculate the mortgage debt.
 
 [9]
 
 The record in this case
 
 *601
 
 does not support use of a different date for measuring the mortgage debt on this marital property.
 

 The superior court’s concern about a potential windfall led it to use the 1988 balance. Its concern was based on its finding that the agreement did not address equity increases resulting from post-dissolution mortgage payments and improvements.
 

 Given the presumption that the equity in marital property is derived by comparing the market value and the debt as they stand on the same date, an agreement’s total failure to address this topic would not justify use of one date to measure the market value and another to measure the debt. And, although the evidence here is sparse on this central issue, we conclude that the existing evidence is inconsistent with any implicit finding that the parties affirmatively intended to exempt Lesley from sharing in post-dissolution mortgage reductions.
 

 The agreement specified that Randy “will occupy the house and pay its mortgage and utilities until it sells....” It was undisputed that Lesley no longer lived in the house. Lesley testified that she had understood the agreement to require that she and Randy would split equally the difference between the sale price and whatever was then owed on it. Because the agreement expressly required Randy to make the post-dissolution mortgage payments, Lesley’s testimony was inconsistent with giving Randy all the credit for post-dissolution reductions in the mortgage balance. She testified that she believed Randy received the benefit of living in the house in exchange for making the mortgage payments. She also testified that if there had been a loss, she had expected to share that loss equally. In response to the court’s questions, she and Randy both testified that when they entered into the agreement there was no time limit on how long it would take to sell the house. Randy testified that in agreeing to make the mortgage payments he understood he would live in the house. He also testified that he did not see that making the mortgage payments was a trade-off for getting to stay in the house. He did not testify that he understood that the parties had agreed the equity would be calculated using the 1988 mortgage balance, or that they had agreed Lesley would not participate in post-dissolution equity increases resulting from mortgage payments. Although Randy objected in the superior court that any evidence by the parties about their contracting intentions violated the parol evidence rule, he does not argue on appeal that Lesley’s testimony was inadmissible.
 

 Because the agreement seems to balance the benefit of occupying the home against the cost of the mortgage payments, it seems highly improbable that the parties also silently agreed that Randy would also receive all the benefit of mortgage reductions resulting from those payments when their house eventually sold. There is no evidence in the record that the mortgage payments exceeded the monthly rental value of the house. There is no dispute on appeal that the house had substantial value ($127,500). The record establishes that this was a two-bedroom, two-bathroom, 1,546 square-foot house, with a two-car garage. There was no evidence that its condition at the time of dissolution significantly diminished its rental value. The evidence therefore does not permit us to find as a matter of law that the house had insignificant rental value and that Randy consequently derived no benefit from living there, or that the mortgage payments materially exceeded the monthly payments required to rent comparable property. We have recognized that living in the marital residence after dissolution or divorce has value.
 
 [10]
 
 The record justifies an assumption that the benefit of living in the home was not materially less than the cost of the mortgage payments.
 

 Randy moved for relief and proposed a method of valuation that gave him credit for equity increases resulting from his post-dis
 
 *602
 
 solution mortgage payments. Although it might be appropriate to conclude that he failed to carry his burden of showing that the benefit the agreement gave him (the right to continue living in the home) was less than the mortgage payments, it is not necessary to rely on a burden of proof analysis. Nothing in the agreement justifies an interpretation that denies Lesley participation in these debt reductions. The parties apparently intended to deal comprehensively in an integrated fashion in dividing their property. Lesley relinquished any claim to Randy’s military retirement, but continued to share the contingent liability under the mortgage, including exposure to half the loss if the house was sold before its market value exceeded the balance on the debt.
 

 Randy argues that it would be unfair to deny the credit because he claims he paid every expense, cost, tax obligation, and premium for the property. His supporting record citations do not address premiums or tax payments, but assuming Randy paid all such expenses after the dissolution, he also received the benefit of living in the home, as well as the benefit of taking annual income tax deductions for mortgage interest and property tax payments.
 

 Splitting post-dissolution reductions in the loan balance roughly approximates what would have happened if Randy had paid half the rental value of this jointly owned property monthly to Lesley and they had each paid half the monthly mortgage payment. The superior court found that denying the credit to Randy would give Lesley a “windfall” and noted what would happen if the mortgage were completely paid off. It found that Lesley’s “position would entitle her to half of $127,500.” We do not see that result as untoward under these circumstances.
 

 Given ambiguity, a court must give effect to the reasonable expectations of the parties as determined by reviewing the language of any disputed provisions, other provisions, relevant extrinsic evidence, and case law interpreting similar provisions.
 
 [11]
 
 The phrase “profits or debt” is ambiguous, and the superior court correctly interpreted that phrase to mean “equity.” But the remainder of the agreement and the extrinsic evidence gave no basis for calculating equity in the way the court did, and we conclude that it was clear error to find that the parties intended that only Randy would be credited with this equity increase.
 

 Randy seems to argue that AS 25.24.160(a)(4), Rule 60(b)(5), and
 
 Foster v. Foster,
 
 684 P.2d 869 (Alaska 1984) (relying on Rule 60(b)(6)), provide an alternative basis for affirming.
 
 [12]
 
 He has not cross-appealed or argued that it was error to deny his motion for Rule 60(b)(5) relief. We decline to rely on this alternative basis to affirm. There is no indication extraordinary circumstances justified relief that effectively would have given Randy rent-free occupancy of the house for nine years; the delay in sale of the home and Lesley’s alleged refusal in 1994 to cooperate with a potentially beneficial refinancing do not appear to be extraordinary circumstances justifying relief under Rule 60(b)(6). Nor does the record establish that a fundamental, underlying assumption of the dissolution agreement had been destroyed.
 
 [13]
 
 Under these circumstances, we are not willing to grant extraordinary relief which the superior court chose to deny.
 

 D. Was
 
 It Error Not to Require Randy to Reimburse Lesley for Randy’s “Equity Withdrawal”?
 

 The mortgage payment subsidy Randy obtained under the Alaska homeowner’s assistance program in 1989 subsidized Randy’s mortgage payments for twenty-four months and paid his January 1989 mortgage install
 
 *603
 
 ment. The total cost, $7,908.92, was added to the parties’ mortgage balance and amortized over the remaining thirty years of the loan. Lesley argues that the subsidy was an “equity withdrawal” by Randy; she contends that the superior court should have ordered Randy to share the equity withdrawal by paying Lesley $3,954.46, half the amount of the withdrawal.
 

 The superior court did not expressly discuss this issue, no doubt because it recognized that the credit Lesley sought was inconsistent with the court’s decision that it should look to the debt owing at the time of dissolution. It was not necessary for it to reach this issue because the court used the 1988 mortgage to calculate the parties’ share in the equity. But because we have concluded that it was error not to rely on the 1997 mortgage balance, we must consider the issue.
 

 Randy acknowledges that he received a “front-loaded benefit of a slightly reduced mortgage payment.” But he argues, in effect, that he received no real benefit because the cost was amortized over the remaining life of the loan and because he incurred a far greater obligation (with interest).
 

 We disagree with his characterization. The subsidies reduced Randy’s monthly mortgage payments for twenty-four months by an average of more than $200 and completely paid the January 1989 installment of nearly $1,300. The assistance and the January 1989 payment added $7,908.92 to the balance due on the parties’ joint debt. Randy thus unilaterally received the benefit of that assistance in 1989, and in doing so unilaterally reduced the parties’ equity in the marital home. On remand, the credit sought by Lesley must be granted to compensate for the benefit received by Randy.
 

 E.
 
 Was It Error to Subtract $1,897.56 for Value Added by Randy’s Post-dissolution Improvements?
 

 Randy claimed that he had spent at least $9,487.80 in post-dissolution improvements and asserted that his investment added $1,897.56, twenty percent of the expense, to the house’s value. The superior court gave Randy credit for $1,897, as a “post-dissolution addition to value (20% of cost of improvement).” It subtracted this amount from the house’s equity to prevent Lesley from benefitting from Randy’s post-dissolution contributions. Lesley complains that no evidence substantiates the court’s finding that the improvements added $1,897.56 to the market value.
 

 Randy provided evidence of his expenses, and a real estate expert testified that improvements could help a house retain value and could also add value to a house. The expert did not express any opinion as to whether Randy’s particular improvements added $1,897.56 or any other amount to the value of this house.
 

 Because the superior court had before it evidence that the improvements could maintain or increase the house’s existing value, it was not clear error for the court to award a relatively modest twenty percent credit for Randy’s expenses. We therefore affirm this credit.
 

 IV.
 
 CONCLUSION
 

 Because it was not error to award credit for the home improvement expenses, we AFFIRM this element of the award. Because it was error to look to the debt at the time of dissolution rather than at the time of sale and to fail to divide the “equity withdrawal,” we REVERSE and REMAND for recalculation of the amount Randy must pay Lesley to buy out her interest in the marital home.
 

 [1]
 

 . Randy's motion proposed the following valuation:
 

 Sale price $127,500.00
 

 Post-dissolution addition to value -$ 1,897.56
 

 Parties’ initial purchase price -$122,000.00
 

 Parties' initial closing costs -$ 1,438.24
 

 Parties’ costs of improvements -$ 11,538.37 ($ 9,374.17)
 

 [2]
 

 .
 
 See Van Alfen v. Van Alfen,
 
 909 P.2d 1075, 1077 n. 4 (Alaska 1996) (citing
 
 Johnson v. Schaub,
 
 867 P.2d 812, 818 n. 12 (Alaska 1994) (contract interpretation is generally a question of law)).
 

 [3]
 

 .
 
 See id.
 
 (citing
 
 Beesley v. Van Doren,
 
 873 P.2d 1280, 1281 (Alaska 1994)).
 

 [4]
 

 .
 
 See Harrelson v. Harrelson,
 
 932 P.2d 247, 252 n. 6 (Alaska 1997) (citing
 
 State, Dep't of Revenue v. Merriouns,
 
 894 P.2d 623, 625 (Alaska 1995)).
 

 [5]
 

 .
 
 See Parker v. Northern Mixing Co.,
 
 756 P.2d 881, 892 (Alaska 1988).
 

 [6]
 

 .
 
 See Keffer v. Keffer,
 
 852 P.2d 394, 397 (Alaska 1993);
 
 see also Bond v. Bond,
 
 69 Ohio App.3d 225, 590 N.E.2d 348, 349-50 (Ohio App.1990) ("Where there is good faith confusion over the requirements of the dissolution decree, a court has the power to enforce its decree, to hear the matter, clarify the confusion, and resolve the dispute.”) (citations omitted).
 

 [7]
 

 .
 
 Keffer,
 
 852 P.2d at 397 (citing
 
 Jensen
 
 v.
 
 Ramras,
 
 792 P.2d 668, 670 (Alaska 1990)).
 

 [8]
 

 . " ‘A contract is ambiguous only if, taken as a whole, it is reasonably subject to differing interpretations.’ "
 
 Id.
 
 at 397 (quoting
 
 State v. Fairbanks N. Star Borough Sch. Dist.,
 
 621 P.2d 1329, 1331 n. 4 (Alaska 1981)).
 

 [9]
 

 .
 
 See Black’s Law Dictionary
 
 540 (6th ed.1990) (defining "equity” as the "[v]alue of property ... over and above the indebtedness against it (e.g., market value of house minus mortgage),” and as the "difference between the fair market value and debt in property”);
 
 see also Webster’s II New Riverside University Dictionary
 
 440 (1994) (defining "equity” as "[t]he money value of a property
 
 *601
 
 beyond any mortgage or liabilities existing on it”).
 

 [10]
 

 .
 
 See Rodriguez v. Rodriguez,
 
 908 P.2d 1007, 1013 (Alaska 1995) ("[W]here the use of marital property after separation effectively excludes the other spouse, the rules of cotenancy require payment to the marital estate of the fair market rental value for use of the property.”) (citing
 
 Wood
 
 v.
 
 Collins,
 
 812 P.2d 951, 958 (Alaska 1991)).
 

 [11]
 

 .
 
 See Keffer,
 
 852 P.2d at 397.
 

 [12]
 

 .
 
 See Wood v. Collins,
 
 812 P.2d 951, 959 (Alaska 1991) (affirming relief that was proper under Rule 60(b) even though superior court erroneously "called the motion one for reconsideration”). "We may affirm the superior court on any basis appearing in the record.”
 
 Far North Sanitation, Inc. v. Alaska Pub. Util. Comm’n,
 
 825 P.2d 867, 869 n. 2 (Alaska 1992)(citing
 
 Sea Lion Corp. v. Air Logistics of Alaska, Inc.,
 
 787 P.2d 109, 116 (Alaska 1990)).
 

 [13]
 

 .See Lowe v. Lowe,
 
 817 P.2d 453, 458-59 (Alaska 1991);
 
 Schofield v. Schofield, 111
 
 P.2d 197, 202 (Alaska 1989);
 
 Foster v. Foster,
 
 684 P.2d 869, 872 (Alaska 1984).