Walter H. SIGGELKOW, Appellant,

v.

Marilyn Sharon SIGGELKOW, Appellee.

No. 5630.

Supreme Court of Alaska.

April 30, 1982.

C. R. Kennelly, Kennelly, Azar & Donohue, P. C., Fairbanks, and George M. Yeager, Fairbanks, for appellant.

Richard D. Savell, Law Offices of Richard D. Savell, Fairbanks, for appellee.

Before BURKE, C. J., and RABINOWITZ, CONNOR, MATTHEWS and COMPTON, JJ.

## OPINION

COMPTON, Justice.

This appeal concerns an action for divorce. We address below the propriety of the superior court's denial of a motion for a continuance. We also address the award of attorney's fees and the assessment of the cost of providing a guardian ad litem.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Walter Siggelkow and Marilyn Siggelkow (hereafter the parties will be referred to by their first names) were married on October 16, 1968. There are two children of the marriage.

On December 7, 1979, Marilyn filed an action for divorce. Following the commencement of the divorce proceedings, Walter changed counsel on several occasions. Walter consented to the withdrawal of his second attorney prior to oral arguments that were to be held on April 8, 1980 for the disposition of various motions relating to the divorce. This prompted the parties to request postponement of the arguments until April 29, 1980. At the April 29 hearing Walter still did not have counsel. The court addressed Walter regarding his lack of representation at the hearing. Walter replied that he intended to be represented "in the final ... one." The court ordered that the case be set for trial within sixty days.

However, it became impossible to schedule the trial within sixty days. In June 1980, the court notified the parties by mail that it had set the divorce hearing for the week of August 11. On June 13, 1980, Walter signed the certified receipt indicating that he had received this notice. Walter wrote to the superior court on June 16, 1980, requesting that his case be continued until October. He claimed that some of his witnesses could not attend in August and that he had not been able to obtain certain documents. The hearing date was not changed.

On August 8, 1980, a pre-trial conference was held. Walter attended without counsel. However, Walter did have counsel on the day of the final divorce hearing, three days later. His counsel filed a notice of change of judge pursuant to Civil Rule 42(c). This recusal resulted in the reassignment of the case to another judge, and the final divorce hearing was rescheduled for September 3, 1980.

Walter moved for a continuance on August 18, 1980, alleging that he had been hospitalized in Fairbanks on August 15, 1980, and that he would not be able to "participate in his own trial for quite some time." A letter from a physician was attached in support of the motion. The superior court denied the motion on September 3, 1980, and the divorce hearing proceeded that same day.

The court entered judgment on October 13, 1980. The court awarded Marilyn custody of the children and a portion of the Siggelkows' property. The court also awarded Marilyn attorney's fees and costs. In addition, the court assessed against Walter all costs incurred by the State of Alaska in providing a guardian ad litem.

Walter appeals. He submits that the superior court erred in denying his motion to continue the divorce hearing, in awarding Marilyn attorney's fees, and in assessing him with the full cost of the guardian ad litem.[1]

## II. DENIAL OF CONTINUANCE

We have consistently held that "a trial court's refusal to grant a continuance will not be disturbed on appeal unless an abuse of discretion is demonstrated." *Gregoire v. National Bank of Alaska*, 413 P.2d 27, 33 (Alaska), *cert. denied*, 385 U.S. 923, 87 S.Ct. 238, 17 L.Ed.2d 147 (1966).[2] Denial

---

1. Walter also raises four other issues on appeal. He claims that the superior court erred (1) in awarding Marilyn $10,000.00 for jewelry that he had converted; (2) in finding that he had depleted a $10,000.00 trust fund set up for his son, Karl, and ordering him to restore it; (3) in requiring him to seek psychiatric counseling before allowing him visitation privileges with the children; and (4) in dividing the parties' property.

Based upon a careful review of the record we find no abuse of discretion in the superior court's resolution of these issues. In each instance the evidence adequately supports the superior court's findings.

2. *See also Jimmie v. Alaska Village Electric Co-op,.Inc.*, 624 P.2d 1258, 1260 (Alaska 1981); *W. E. W. v. D. A. M.*, 619 P.2d 1023, 1024 (Alaska 1980); *Barrett v. Gagnon*, 516 P.2d 1202, 1203 (Alaska 1973); *Wright v. State*, 501

of a motion for continuance constitutes an abuse of discretion "when a party has been deprived of a substantial right or seriously prejudiced." *Barrett v. Gagnon*, 516 P.2d 1202, 1203 (Alaska 1973). The particular facts and circumstances of each case determine whether the denial of a continuance is so unreasonable or so prejudicial as to amount to an abuse of discretion. *Wright v. State*, 501 P.2d 1360, 1366 (Alaska 1972); *Kalmus v. Kalmus*, 103 Cal.App.2d 405, 230 P.2d 57, 64 (1951), *cert. denied*, 342 U.S. 903, 72 S.Ct. 292, 96 L.Ed. 676 (1952). Several policy considerations intermingle in this determination. On the one hand,

> [b]ecause of the necessity for orderly, prompt and effective disposition of litigation and the loss and hardship to the parties to an action, as well as to witnesses therein, it becomes and is part of the bounden duty of the trial judge, in the absence of some weighty reason to the contrary, to insist upon cases being heard and determined with as great promptness as the exigencies of the case will permit.

*Kalmus v. Kalmus*, 230 P.2d at 63.

On the other hand, the trial court's legitimate concern for preventing delay should not prejudice the substantial rights of parties by forcing them to go to trial without being able to fairly present their case. *Yates v. Superior Court*, 120 Ariz. 436, 586 P.2d 997, 998 (1978); *Gonzales v. Harris*, 189 Colo. 518, 542 P.2d 842, 844 (1975).

Walter asserts that the denial of his motion for a continuance prejudiced his case because ill health limited his opportunity to discuss his case with counsel and hampered their preparation for the divorce hearing. Allegedly, Walter was hospitalized only four or five days after he retained counsel.

Initially, we note that the "[i]llness of a party does not *ipso facto* require the granting of [a continuance]." *Kalmus v.*

*Kalmus*, 230 P.2d at 63. Generally, the denial of a continuance requested on the ground of ill health will be held reversible error only when the applicant suffered prejudice as a result of the denial.[3]

The prejudice that Walter claims to have suffered stems not from his illness, but from his late retention of counsel. Early in 1980, Walter's second attorney withdrew with Walter's consent. Walter had stated to the superior court at the April 29, 1980 hearing that he intended to have counsel "in the final . . . one." Yet, Walter appeared at the pre-trial conference on August 8, 1980—three days before the final divorce hearing—without counsel. He has not explained why he waited until the court proceedings had almost started before hiring an attorney.

Late retention of counsel does not necessarily warrant a continuance:

> [W]hen new counsel is engaged just prior to the trial date, the alleged lack of preparation on the part of such counsel is not necessarily a ground for continuance; particularly where the party has been guilty of negligence, such as inexcusable delay in employing the new counsel, or where such recently retained counsel could have prepared himself for trial by the exercise of reasonable diligence; but where he could not have thus prepared himself, the cause may, in a proper case, be continued.

*Benson v. Benson*, 66 Nev. 94, 204 P.2d 316, 318 (1949). *Cf. Barrett v. Gagnon*, 516 P.2d at 1203 (attorney's withdrawal on eve of trial, leaving client unprepared, not *ipso facto* basis for continuance). If the rule were otherwise, "one or the other of the litigants could indefinitely avoid trial of the issues by making late substitutions." *Benson v. Benson*, 204 P.2d at 319, *quoting Berger v. Mantle*, 18 Cal.App.2d 245, 63 P.2d 335, 337 (1936).

---

P.2d 1360, 1365–66 (Alaska 1972); *Doe v. State*, 487 P.2d 47, 57 (Alaska 1971).

**3.** We note that following the denial of the motion for continuance, Walter was present at the trial. Where a court denies a motion for continuance sought by a party who claims illness, the presence of the party at trial is oftentimes

indicative of whether the denial resulted in prejudice. *Compare Pollard v. Walsh*, 194 Colo. 566, 575 P.2d 411, 412 (1978) (prejudice where party unable to appear) *with Fejer v. Paonessa*, 104 Cal.App.2d 190, 231 P.2d 507, 509 (1951) (no prejudice). *See generally* Annot., 68 A.L.R.2d 470, 512–13 (1959).

■ In the present case, Walter received notice on June 13 that the final divorce hearing was scheduled to begin on August 11.[4] Notwithstanding such notice, Walter waited until the last minute to hire an attorney. No evidence is presented to excuse this delay in obtaining a new attorney. Prejudice resulting from a party's lack of diligence in securing an attorney does not afford a basis to obtain a continuance. *See Maynard v. Bullis*, 99 Cal.App.2d 805, 222 P.2d 685, 686 (1950); *Benson v. Benson*, 204 P.2d at 319. Moreover, since the challenge to the judge resulted in a postponement from August 11 to September 3, Walter's new attorney had adequate opportunity to prepare the case. In our view, the court's decision to proceed as scheduled did not deprive Walter of the right to present his case. We conclude, therefore, that the denial of the motion for continuance was not an abuse of discretion.

## III. THE AWARD OF COSTS AND ATTORNEY'S FEES

At the close of the trial the superior court declared its oral decision. With respect to attorney's fees the court stated, "The plaintiff is the prevailing party in this litigation and is entitled to costs and attorney's fees." In its findings of fact the superior court again stated that "[p]laintiff is the prevailing party herein, and is entitled to an award of costs and attorney fees." The final judgment of the superior court awarded plaintiff costs in the amount of $1,224.91 and attorney's fees in the amount of $6,558.27.

■ The superior court evidently based its award of attorney's fees and costs upon the "prevailing party" rule of Civil Rule 82 that normally governs the award of attorney's fees. However, divorce actions constitute an exception to this rule. AS 09.55.200(a)(1) regulates the award of attorney's fees and costs in divorce cases. *Cooke v.*

*Cooke*, 625 P.2d 291, 293 (Alaska 1981); *Johnson v. Johnson*, 564 P.2d 71, 76–77 (Alaska 1977), *cert. denied*, 434 U.S. 1048, 98 S.Ct. 896, 54 L.Ed.2d 800 (1978); *Burrell v. Burrell*, 537 P.2d 1, 6–7 (Alaska 1975). AS 09.55.200(a) provides in part:

> During the pendency of the action the court may provide by order
>
> (1) that one spouse pay an amount of money as may be necessary to enable the other to prosecute or defend the action;
>
> . . .

As noted in *Sherry v. Sherry*, 622 P.2d 960, 965 (Alaska 1981), the statute "permits, but does not compel," the award of attorney's fees and costs.

Nevertheless, according to the rule that a proper result will not be disturbed on appeal regardless of the reasoning employed below,[5] the superior court's erroneous reliance upon the "prevailing party" standard does not constitute reversible error if its distribution of attorney's fees and costs is justified under AS 09.55.200(a)(1).

*Burrell* pronounced the standard for reviewing attorney's fees awards in accordance with AS 09.55.200(a)(1):

> Whether or not to make any award pursuant to AS 09.55.200(a)(1) as well as the amount of any such award, is committed to the sound discretion of the trial court. *The parties' relative economic situations and earning powers are relevant factors to be weighed in determining whether to order payment pursuant to AS 09.55.200(a)(1).*

537 P.2d at 7 (emphasis added). Walter contends that the superior court abused its discretion because its award did not conform to this standard. Marilyn argues that despite the terminology used by the superior court the award was in fact consistent with the relative economic situations of the parties and, therefore, should not be reversed.

---

4. Walter's June 16, 1980 letter to the superior court demonstrates that he had actual knowledge of the trial date. The relevant portion of the letter provided: "I respectfully request a continuance until late September or October, 1980 regarding ... *Siggelkow v. Siggelkow*, currently set for August 11, 1980."

5. *Davis v. Hallett*, 587 P.2d 1170, 1171 (Alaska 1978).

Walter, a former teacher, is 57 years of age and receives $13,000.00 yearly as an early retiree.[6] In comparison, Marilyn is 34 and earns $32,600.00 per year as a school teacher. However, income is not the sole determinant of one's economic standing. We have recognized that other factors may "have bearing on the relative economic standing of the parties" and "are reasonable factors for the trial court to consider." *Johnson v. Johnson*, 564 P.2d at 77. Such factors may include whether the property was divided equally and whether an equal amount in attorney's fees was expended by the parties. *Id.*

■ These other factors, however, do not offset the wide differential in current earnings between the parties.[7] Marilyn testified that because of Walter's delinquency she had to pay large debts and expenses relating to their marital property.[8] This is irrelevant in assessing the parties' present economic status. Further, these past payments were considered by the trial court in its award of property to the parties. The superior court's property division awarded Walter real property worth $130,000.00 compared to Marilyn's real property award valued at $108,500.00. This comparison is misleading, however, since some of Walter's property was encumbered.[9] Thus Marilyn received a substantial property award from which she could have paid her attorney's fees. In view of these circumstances, we

conclude that the superior court's award of costs and attorney's fees was unreasonable and constituted an abuse of discretion. Therefore, we direct each side to bear their own costs and attorney's fees.

## IV. GUARDIAN AD LITEM FEES

AS 09.65.130(a) gives the superior court discretionary authority to appoint a guardian ad litem to represent the interests of a minor child in legal proceedings.[10] The statute authorizes the superior court to "appoint an attorney to represent the minor with respect to his custody, support, and visitation or in any other legal proceeding involving his welfare" and to "enter an order for costs, fees, and disbursements in favor of the child's attorney." Subsection (b) provides, in part:

If custody, support, or visitation is an issue, the order for costs, fees, and disbursements shall be made against *either or both parents*, except that, if one of the parties responsible for the costs is indigent, the costs, fees, and disbursements for that party shall be borne by the state. If either or both parents are only temporarily without funds, as determined by the court, the court may advance payment for legal representation or other services rendered to the child; however, no repayment may be required for those who are receiving legal services for the indigent.... The court shall, *if possible*,

6. In addition to his pension, Walter receives an undisclosed annuity payment and rental income from certain property holdings. However, Walter contends that mortgage payments on the property exceed the rental income and that the deeds of trust that the superior court imposed upon three of the parcels encumbers their sale.

7. Although the parties' incomes were approximately equal during their marriage, this fact cuts in favor of requiring the parties to bear their respective costs and attorney's fees.

8. The superior court found that Marilyn "satisfied marriage debts since the separation and arising from the [parties'] new home in an amount in excess of $32,572.00, during a period when [Walter] ceased paying debts of the marriage"; that appellant "failed and refused ... to satisfy any debts of the marriage or make expenditures for preservation of marriage prop-

erty"; that "to satisfy marriage debts [Marilyn] was compelled to withdraw more than $30,-000.00 from her tax sheltered annuity, and as a result thereof, has faced additional taxes and penalties of approximately $7,000.00"; that Marilyn "paid medical expenses for the children pending the action" while appellant did not; that Marilyn paid property taxes, sewer and water assessments; and that since the separation Marilyn has had to spend $550.00 per month in rent for herself and the children.

9. At the time of the property division, one of the parcels of property was subject to a deed of trust equalling $16,475.18; another parcel was subject to a $27,783.18 deed of trust. Marilyn is the beneficiary of the larger deed of trust.

10. Alaska R.Civ.P. 17(c); Alaska R. Children's P. 11(a), 15.

avoid assigning costs to only one party by ordering that costs of the child's legal representation or other services be paid from proceeds derived from a sale of property belonging to both parents, before a division of property is made. [Emphasis added.]

Early in the divorce proceedings the superior court appointed a guardian ad litem to represent the interests of the Siggelkow children. At the conclusion of the divorce hearing, the superior court ordered that Walter pay the entire $3,131.27 cost of the guardian ad litem and secured this judgment by a deed of trust on a dwelling owned by Walter. The fees were assessed against Walter because Walter had objected to the court's motion to begin the trial with the testimony and examination of the guardian ad litem. As a result, fees were incurred while the guardian ad litem spent several idle days in court. The guardian ad litem was not questioned until the end of the trial.

Walter argues that the superior court should have ordered Marilyn to share in the cost of the guardian ad litem because it was possible, within the meaning of AS 09.65.-130(b), to tax both parties. Walter points out that the superior court could have ordered a sale of vacant lots owned by the Siggelkows as marital property. In its division of the real property, the superior court awarded these lots to Marilyn.

We hold that the superior court erred in taxing Walter with the full cost of the guardian ad litem. AS 09.65.130(b) generally precludes the superior court from taxing only one parent with the cost of a guardian ad litem when both parents can afford the cost.[11] In this situation the statute requires that both parties bear the cost of the guardian ad litem equally.

Marilyn emphasizes the initial language of AS 09.65.130(b)—that costs may be ordered "against either or both parents." However, the remainder of the statute indicates that "either or" refers to a choice that is to be made on the basis of the parents' individual financial resources and is controlled by the statement that the "court shall, if possible, avoid assigning costs to only one party . . . ." Here, it is possible to avoid assigning costs to just one party, since both have the ability to contribute to the fees of the guardian ad litem. This construction is consistent with Children's Rule 15(c), which provides for an inquiry to determine whether a child's parents are financially able to employ counsel for the child.

In this case, the superior court charged Walter with the full cost merely because Walter requested that the guardian ad litem remain present in court until the time when the guardian ad litem's testimony would be required. This is not a proper consideration under AS 09.65.130(b). Indeed, the presence of the guardian ad litem at the trial constitutes an essential element of the guardian ad litem's duty. In *Veazey v. Veazey*, 560 P.2d 382, 387 (Alaska 1977), we held that a guardian ad litem "is in every sense the child's attorney, with not only the power but the responsibility to represent the client zealously and to the best of his ability." Thus, the effect of the superior court's decision was to penalize Walter merely for requesting that the guardian ad litem perform his or her duty.

We remand this matter to the superior court for the purpose of entering judgment against each party for one-half the cost of the guardian ad litem. Payment shall be secured by deeds of trust placed upon both Walter's and Marilyn's property, as allocated by the divorce decree.

AFFIRMED in part, REVERSED in part, and REMANDED for further proceedings consistent with this opinion.

---

11. We hesitate to pronounce an ironclad rule because under AS 09.65.130(a) a guardian ad litem may be appointed to represent the minor's rights in relation to only one parent, such as when the state initiates a child custody action against a previously divorced, custodial parent.