Violet N. MACK, Appellant,

v.

Cody J. MACK, Appellee.

No. S–3751.

Supreme Court of Alaska.

Aug. 30, 1991.

Paula Williams, Anchorage, for appellant.

Peter F. Mysing, Kenai, for appellee.

Before RABINOWITZ, C.J., BURKE, MATTHEWS, COMPTON and MOORE, JJ.

## OPINION

BURKE, Justice.

Violet Mack appeals from two aspects of the superior court's decision in this divorce action. We affirm as to both issues.

### I

Violet initially appeals the superior court's decision to deny her a second continuance. Violet filed her complaint for divorce from Cody Mack on September 28, 1988. Trial was set for June 8, 1989. Citing serious health problems, Violet requested a continuance, which the superior court granted. The court rescheduled trial for August 7, 1989. Prior to trial, however, Violet's original attorney withdrew from the case. On August 1, 1989, Violet filed a motion for a second continuance of thirty days to conduct discovery. Violet's new attorney averred that a second continuance

was necessary because Violet's first attorney had filed *no* discovery requests in the case.

On August 7, 1989, the date of trial, Judge Charles K. Cranston first heard oral argument on Violet's motion for a second continuance and denied the motion. The court specifically noted that nearly a full year had passed between Violet's filing of her divorce complaint and the trial. Thus, the court concluded that Violet had sufficient time to conduct discovery in the case. The superior court also noted that trial courts have a substantial interest in maintaining the prompt and orderly disposition of the cases brought before them.

■■■ We review Judge Cranston's denial of Violet's motion for a second continuance under the abuse of discretion standard. *Siggelkow v. Siggelkow*, 643 P.2d 985, 987 (Alaska 1982). "The particular facts and circumstances of each case determine whether the denial of a continuance is so unreasonable or so prejudicial as to amount to an abuse of discretion." *Id.* Among the policy considerations relevant to this determination are the "necessity for orderly, prompt and effective disposition" of the case, and "hardship to the parties [and] ... witnesses." *Id.*

■■■ Applying the standards set forth in *Siggelkow*, we believe that the trial court here had reason to discount the hardship that Violet might suffer if denied a second continuance, because her, or her original attorney's, lack of due diligence actually caused that hardship.[1] The trial court also had reason to deny a second continuance in the interest of orderly, prompt and effective disposition of the case. Consequently, we do not believe that the trial court committed an abuse of discretion by denying Violet's second request for a continuance.

1. We note that Violet is free to pursue a professional malpractice action against her original attorney.

2. Cody Mack appears to have been an active participant in business decisions, such as the purchase of the real property on which the

## II

After denying a second continuance, the superior court tried the property division issues in the case. On August 24, 1989, the court issued its findings of fact and conclusions of law. The only part of the court's decision that Violet now appeals concerns the characterization of a debt outstanding on real property Violet and Cody Mack had purchased in 1986. The property consisted of one large parcel with a building, out of which the Macks had operated a retail fur business,[2] and two smaller adjacent parcels. The trial court's findings of fact in regard to this realty were perfectly consistent with evidence at trial. The court wrote:

11. On or about October 11, 1986, the parties entered into a real estate contract for the purchase of certain property in ... Kenai, Alaska. The full purchase price of the property was $143,000.00 The parties were credited with a down payment ... and other payments.... The remaining balance of $122,000.00 is payable in monthly installments of $941.62 with interest at the rate of 8% per annum. The balance due is secured by a promissory note and deed of trust.

12. The amount due and owing on said property is approximately $118,000.00.

13. In the event of default, paragraph 10 of the real estate purchase contract provides in part as follows:

It is agreed that the seller's recourse and the buyer's liability under this contract is limited to the real property described herein, but including any and all existing and subsequent improvements and that no deficiency judgment obtained by sellers shall be enforceable against the buyers to collect under this contract....

14. On the same day the parties purchased from the same sellers property

business currently operates. Violet Mack, however, was the actual proprietor of the fur business because, as an Alaskan Native, she has the right to sell seal and otter furs. Cody, apparently, is not an Alaskan Native. Seal fur sales constitute a substantial portion of the business.

adjoining [the above-mentioned parcel for] ... $25,000.00 payable in monthly installments of $209.12 or more at the rate of 8% per annum. The real estate contract for that sale contained the same clause limiting the sellers' recourse as described in paragraph 13 above.

Violet and Cody owed some $23,800 on the smaller, adjoining parcels they purchased for $25,000. Their total debt on the business realty thus amounted to $141,800 ($118,000 plus $23,800). In April 1989, six months prior to trial, the Borough of Kenai for tax purposes, appraised the large parcel at $41,800 and the smaller parcels at $10,-200. The difference, then, between the tax appraisal value and the amount the Macks owed on the business realty was some $89,-000. While tax appraisal value usually is not identical to fair market value, in this instance it is sufficient to establish that the Mack's held considerable negative equity in the business realty.

The trial court expressly refused to consider the negative equity on this realty in its property valuation. The court explained that it found *"the remaining unpaid balance on the property ... is not a personal obligation of plaintiff wife and therefore does not affect the property distribution."* (Emphasis added.) However, the court did assess a balancing payment of $8,650 against Cody "in recognition of the unique character of the unpaid debt obligation ... [and] of the fact that plaintiff, as sole owner of the [fur] business, is equitably entitled to some assistance from defendant incident to the commencement of her sole operation of the business." In effect, the court included the property with the business but valued the property at zero, rather than at some negative value, so that the debt on the property did not affect the court's calculations.[3]

The trial court has broad discretion in property division cases. AS 25.24.-160(a)(4); *Moffitt v. Moffitt*, 749 P.2d 343, 346 (Alaska 1988). Here, we review the trial court's decision to place a value of zero on the business realty. Such a decision is mainly a factual determination to be upset on appeal only if there is clear error. *Id.* (citing Alaska R.Civ.P. 52(a)). "On review, findings of fact are clearly erroneous if, based on the record as a whole, the court is left with the definite and firm conviction that a mistake has been made." *Burcell v. Burcell*, 713 P.2d 802, 804 (Alaska 1986). We find no such error in the trial court's assessment of value.

Generally, the debt owed on any particular item of property will factor into the trial court's determination of the value of it. *Id.* at 805 (remanding with instructions to include marital debt in division analysis); *Burgess v. Burgess*, 710 P.2d 417, 419–20, 422–23 (Alaska 1985) (ordering amount owed on mortgage subtracted from value of home to determine portion of home equity available for distribution and remanding with instructions to consider all debts in overall division). In the present case, however, we believe that the peculiar nature of the Mack's outstanding debt on the business realty justifies the trial court's decision not to adjust the value of that property downward by the entire debt amount.

To begin with, we believe the trial court correctly concluded that Violet would not be subject to a deficiency judgment if she defaulted on the realty debt. The nonrecourse language in the contract is unambiguous. One of the sellers of the realty testified at trial that she intended the sales contract to provide only for retaking of the property in the event of default. Moreover, we previously have upheld the enforceability of nonrecourse clauses such as the one at issue here. *Moening v. Alaska Mutual Bank*, 751 P.2d 5, 9 (Alaska 1988) ("Any agreement between the parties that the creditor will not seek a deficiency judgment and will look only to the security is enforceable.").

Violet thus could have defaulted without incurring loss. As a result, the trial court had reason to ignore the negative equity on

---

**3.** Overall, the court endeavored to divide the ascertained marital property and allocable mar-ital debt between Violet and Cody in equal percentages.

the realty in its equal division calculations.[4] On the other hand, the negative equity also gave the trial court reason not to assign any positive value to the realty. *Cf. Burcell,* 713 P.2d at 805; *Burgess,* 710 P.2d at 419–20, 422–23. Accordingly, we conclude that, on the unique facts of this case, the trial court did not clearly err by assigning a value of zero to the Mack's business realty for the purposes of a marital property division.

AFFIRMED.

---

**4.** Indeed, if the court had placed the negative equity on Violet's side of the ledger, the resulting reduction in Violet's sum total necessarily would have required the court to shift assets from Cody's side to Violet's to even out the division. After final judgment, Violet could have defaulted on the debt without liability and yet retained the assets shifted to her as compensation for the presumed negative value of the property. She thus would have received a windfall.