**Azuron SHOOSHANIAN, Appellant,**

v.

**Colleen DIRE, Appellee.**

No. S–13205.

Supreme Court of Alaska.

Aug. 13, 2010.

**49.** 112 P.3d 655, 665, 668 (Alaska 2005).

**50.** *Id.* at 665.

**51.** *Id.* at 665–66.

**52.** *See id.* at 667–68.

**53.** *See id.* at 667.

David R. Edgren, Edgren Law Offices, LLC, Anchorage, for Appellant.

Kevin G. Brady, Anchorage, for Appellee.

Before: CARPENETI, Chief Justice, FABE, WINFREE, CHRISTEN, and STOWERS, Justices.

*OPINION*

WINFREE, Justice.

## I. INTRODUCTION

A landlord sought re-possession of her condominium from a tenant. The tenant asserted he had an enforceable right to purchase the residence based on an option in his lease (the option right). After a superior court bench trial at which the tenant appeared pro se, the court ruled in favor of the landlord. The tenant appeals, arguing that the trial court erred by: (1) refusing to postpone trial to allow him to retain counsel; (2) failing to assist him with evidentiary objections at trial; (3) failing to disqualify the landlord's attorney as trial counsel because the attorney was a necessary witness; and (4) concluding that there was neither an enforceable purchase agreement nor an unexpired option right. We affirm the trial court's decision because: (1) the trial court did not abuse its discretion or commit plain error with respect to the procedural issues the tenant raises; (2) the trial court's factual findings are not clearly erroneous; and (3) the trial court did not err in its legal conclusions.

## II. FACTS AND PROCEEDINGS

### A. Facts

In May 2004 Azuron Shooshanian and Suewanna Ekstrom began leasing a condominium from Colleen Dire for $800 per month. Dire handwrote the one-page lease agree-

ment, leaving blanks for the lessee's names. Shooshanian wrote his own name into some of the blanks and wrote his and Ekstrom's first names together in others. The lease included an option to purchase the residence and required that "[i]ntent ... be informed to [Dire] within the year before the end of the lease. (first year)." The lease also provided that all payments for repairs and upgrades would factor into the "final cost" of the residence. Neither Shooshanian nor Ekstrom signed the lease. The parties agree that the lease had a one-year term.

The parties agree that when Dire signed the handwritten lease she said the residence was worth approximately $140,000. At some point Shooshanian handwrote at the bottom of the lease, squeezed above Dire's signature, "Sale price of house is 140,000 with -½ % of going rate." Shooshanian explained at trial that "-½% of going rate" meant that after he told Dire he wanted to buy the residence he would owe her interest on the remaining debt at a rate of one-half percent less than the "average going rate" in the mortgage industry. Dire testified at trial that Shooshanian must have added the sentence after she had signed the handwritten lease and handed it to him.

According to Shooshanian the parties also agreed to important terms not reflected in the handwritten lease. Shooshanian testified that when Dire signed the handwritten lease she told him his monthly rental payments would count toward the purchase price and she would finance the purchase. Dire disputed both contentions at trial.

The parties agree that Shooshanian and Ekstrom verbally informed Dire within the lease period that they wanted to buy the residence. Shooshanian contended at trial that when he told Dire he wanted to buy the residence (1) she again said she would finance the purchase and (2) his $800 monthly payments started to function as mortgage payments. Dire disputed both contentions at trial. Shooshanian and Ekstrom never applied for alternative financing or sought an appraisal of the residence. Shooshanian made no payment to Dire beyond the monthly $800, and when he made repairs to the residence he deducted the cost of materials from his monthly payments. Title to the residence remained in Dire's name, and Shooshanian never assumed any responsibility for paying property taxes, insurance premiums, or condominium association dues. Shooshanian testified he understood a portion of his rent money had always gone toward paying the condominium dues and property taxes.

Shooshanian testified that Dire told him not to worry about the lease expiring because he would not be evicted and Kevin Brady, her friend and later her trial attorney, would prepare a new lease. At trial Dire confirmed that she had told Shooshanian she would attempt to get him a better lease. Shooshanian contended that at some point he gave Dire an "option to buy lease" and that she later told him she had filled it out and then lost it, but Dire testified that she did not remember telling him that.

In April 2006, nearly one year after the initial handwritten lease agreement expired and approximately one and one-half years after Shooshanian gave notice of his desire to purchase the residence, Shooshanian, Ekstrom, and Dire met to fill out a form entitled "Residential Lease with Option to Purchase." Together they wrote the date, the parties' names, and the security deposit amount into the blanks provided. Dire even signed at the bottom, but the form was never completed because they were confused about how to fill it out. Among terms left blank were the purchase price, closing date, and financing arrangements.

Shooshanian testified that at Dire's direction in late 2006—approximately one and one-half years after the initial handwritten lease expired and over two years after Shooshanian gave notice he wanted to exercise the option—he went to Brady's office to complete a lease agreement. Shooshanian alleged that Brady then informed him the sale price had increased above $140,000 and insisted that before they addressed the lease, Shooshanian pay all accrued back rent.

### B. Proceedings

Brady—holding a limited power of attorney relating to the residence-gave Shooshani-

an notice of the termination of his tenancy in October 2007, nearly two and one-half years after the lease term had expired and over three years after Shooshanian gave notice of his intent to purchase the residence. Brady filed a Forcible Entry and Detainer (FED) action in district court the next month. In his answer to the FED complaint, Shooshanian asserted that eviction was improper, claiming he held "two option to buy leases." This caused the case to be transferred from district to superior court.[1]

At a conference in mid-April 2008 the trial court informed Shooshanian and Brady that trial would be held the week of June 30. On June 11 Shooshanian moved for a continuance, contending he had other court appearances set for June. In this motion, he also requested Dire's physical presence, alleging she had "deliberately missed trial" in the past—we infer Shooshanian viewed Dire's prior attendance record as an additional reason to postpone trial. Shooshanian moved to expedite his continuance request on June 12. The trial court granted expedited consideration but denied the continuance request on June 13.

At the June 20 pretrial conference Shooshanian told the trial court he was not ready to proceed because he was hiring an attorney. Shooshanian explained that he had "talked to a few different lawyers" in the seven months after the case was filed, but that a particular (unidentified) attorney he spoke to would not be available until August. The trial court did not postpone trial, but told Shooshanian that if he hired an attorney the attorney could move for a continuance. The trial court also noted that if Dire, who had been hit by a car earlier that year, was physically unable to attend trial a continuance would be granted. Trial took place as scheduled, with Dire in attendance and Shooshanian representing himself.

The trial court found that Shooshanian held an option right to purchase the residence, but concluded that a further contract was needed to accomplish the purchase. The trial court also found that Shooshanian told Dire he wanted to buy the residence and that the parties expected a contract would be drafted and signed to memorialize the terms of the sale, but that no further contract was negotiated. The trial court granted Dire judgment for possession. Shooshanian appeals.

## III. STANDARD OF REVIEW

 We review for abuse of discretion a refusal to grant a continuance,[2] decisions about guidance to a pro se litigant,[3] and decisions about the admissibility of evidence.[4] We review the question of whether opposing counsel should have been disqualified for plain error because Shooshanian waived the issue.[5]

 Whether Shooshanian's option right to purchase the residence expired unconsummated is a mixed question of fact and law. We review the factual findings for clear error, reversing only when—"after a thorough review of the record"—we are left with a "definite and firm conviction that a mistake has been made."[6] We review the legal issues de novo and "will adopt the rule of law

---

1. *See* AS 22.15.050 (providing district courts do not have jurisdiction over "action[s] in which the title to real property is in question" or "action[s] of an equitable nature, except as otherwise provided by law").

2. *Siggelkow v. Siggelkow*, 643 P.2d 985, 986 (Alaska 1982) (citing *Gregoire v. Nat'l Bank of Alaska*, 413 P.2d 27, 33 (Alaska 1966), *cert. denied*, 385 U.S. 923, 87 S.Ct. 238, 17 L.Ed.2d 147 (1966)).

3. *Snyder v. Am. Legion Spenard Post No. 28*, 119 P.3d 996, 1001 (Alaska 2005) (citing *Genaro v. Municipality of Anchorage*, 76 P.3d 844, 845 (Alaska 2003)).

4. *Hawley v. State*, 614 P.2d 1349, 1361 (Alaska 1980) (citing *Poulin v. Zartman*, 542 P.2d 251, 260 (Alaska 1975), *on rehearing*, 548 P.2d 1299 (Alaska 1976), *overruled on other grounds by State v. Alex*, 646 P.2d 203, 208 n. 4 (Alaska 1982)).

5. *Tybus v. Holland*, 989 P.2d 1281, 1285 (Alaska 1999) ("We will not consider arguments that parties fail to raise in the lower court, let alone arguments they have conceded below, unless the trial court committed plain error.").

6. *Soules v. Ramstack*, 95 P.3d 933, 936 (Alaska 2004) (citing *Rausch v. Devine*, 80 P.3d 733, 737 (Alaska 2003)).

that is most persuasive in light of precedent, reason, and policy." [7]

## IV. DISCUSSION

### A. The Trial Court Did Not Abuse Its Discretion By Refusing To Continue The Trial.

 Shooshanian argues that the trial court abused its discretion by refusing to continue trial to allow him time to retain an attorney. Refusal to grant a continuance is an abuse of discretion "when a party has been deprived of a substantial right or seriously prejudiced." [8] The reasonableness of the denial and any prejudice arising from the denial are evaluated on a case-by-case basis.[9] "[B]ecause of the necessity for orderly, prompt and effective disposition of litigation and the loss and hardship to the parties [and] witnesses," trial courts should deny motions for continuances unless there is "some weighty reason to the contrary." [10] One such weighty reason is "prejudice [to] the substantial rights of parties by forcing them to go to trial without being able to fairly present their case." [11]

Shooshanian argues that proceeding to trial deprived him of his right to be assisted by counsel. He points out that the right to select and retain one's own counsel is "valuable." [12] He also cites case law regarding the appointment of counsel for indigent litigants in civil cases, although he has not

claimed indigency or otherwise explained the relevance of these cases.

We are instructed by *Siggelkow v. Siggelkow*,[13] where Walter Siggelkow argued that his ability to prepare for trial had been hampered because he was hospitalized days after retaining his third attorney and the trial court denied his motion for a continuance.[14] Walter did not explain why he delayed more than four months between consenting to the withdrawal of his second attorney and hiring his third.[15] We concluded that "[t]he prejudice Walter claims to have suffered stems not from his illness, but from his late retention of counsel." [16] We then quoted with approval the following language from the Supreme Court of Nevada: "[W]hen new counsel is engaged just prior to the trial date, the alleged lack of preparation on the part of such counsel is not necessarily a ground for continuance; particularly where the party has been guilty of negligence, such as inexcusable delay in employing the new counsel. . . ." [17] If late retention of counsel necessarily warranted a continuance, "litigants could indefinitely avoid trial of the issue by making late substitutions." [18]

 Shooshanian points out that "he had never sought any extension of time from the court or otherwise done anything to delay the progress of the case," perhaps in an effort to distinguish his circumstances from those of Walter in *Siggelkow*.[19] Regardless of whether Walter delayed trial before his unsuccessful motion for a continuance,[20] our

7. *Id.* at 936–37 (citing *Carr–Gottstein Props., Ltd. P'ship v. Benedict*, 72 P.3d 308, 310 n. 4 (Alaska 2003)).

8. *Siggelkow*, 643 P.2d at 986–87 (quoting *Barrett v. Gagnon*, 516 P.2d 1202, 1203 (Alaska 1973)) (internal quotation marks omitted).

9. *Id.* at 987 (citing among others *Wright v. State*, 501 P.2d 1360, 1366 (Alaska 1972)).

10. *Id.* (quoting *Kalmus v. Kalmus*, 103 Cal. App.2d 405, 230 P.2d 57, 63 (1951), *cert. denied*, 342 U.S. 903, 72 S.Ct. 292, 96 L.Ed. 676 (1952)).

11. *Id.* (citing *Yates v. Superior Court*, 120 Ariz. 436, 586 P.2d 997, 998 (Ariz.App.1978) and *Gonzales v. Harris*, 189 Colo. 518, 542 P.2d 842, 844 (1975)).

12. *O'Neill Investigations, Inc. v. Ill. Employers Ins. of Wausau*, 636 P.2d 1170, 1179 (Alaska 1981).

13. 643 P.2d 985.

14. *Id.* at 986–87.

15. *Id.*

16. *Id.* at 987.

17. *Id.* (quoting *Benson v. Benson*, 66 Nev. 94, 204 P.2d 316, 318 (1949)).

18. *Id.* (quoting *Benson*, 204 P.2d at 319).

19. This contention is somewhat inaccurate because Shooshanian did, albeit unsuccessfully, seek an earlier continuance.

20. *Id.* at 986.

specific holding did not depend on that fact: "[p]rejudice resulting from a party's lack of diligence in securing an attorney does not afford a basis to obtain a continuance." [21]

As with Walter in *Siggelkow*, any impairment of Shooshanian's right to present his case was caused by his lack of diligence in securing an attorney. Shooshanian offered no excuse for his failure to retain counsel during the seven months before the trial date. In short, the trial court did not force Shooshanian to go to trial without being able to fairly present his case—rather, Shooshanian caused the situation by "wait[ing] until the last minute to [consider] hir[ing] an attorney." [22]

Shooshanian argues that the only hardship Dire would have suffered had the court granted a continuance was "not having the [p]roperty in her possession, as Shooshanian's monthly payments to her were current as of the date of the pretrial conference on June 20, 2008." But a continuance would have cost Dire the opportunity to re-rent the residence for $1,200 or $1,500 per month— the rental value Shooshanian and Ekstrom estimated at trial for properties with the same number of bedrooms in the same area of town. Although the trial court could have guarded against this opportunity cost by requiring a bond, it did not need to reach the issue because Shooshanian failed to demonstrate a weighty reason to postpone trial.

The trial court did not abuse its discretion by denying Shooshanian's request for a continuance.

**B. The Trial Court Did Not Abuse Its Discretion By Not Explaining How To Make Hearsay And Relevance Objections Or By Not Excluding Hearsay Evidence To Which No Objection Had Been Raised.**

Shooshanian raises two issues relating to the assistance a trial court must provide a pro se litigant. First, Shooshanian argues that the trial court failed to provide him "with reasonable assistance, advisement and allowance in connection with procedural, versus strategic, aspects of the litigation." Specifically, Shooshanian asserts the trial court "f[ell] short" by "fail[ing] to inform [him] of his basic right to object to testimony on certain grounds and to the introduction of other evidence." Second, he argues that the trial court wrongfully "allow[ed] substantial hearsay testimony provided by [Dire] and her witness without any admonishment of the witness or notice to [Shooshanian] that he had the right to object to such testimony." Shooshanian takes exception to testimony by Dire's daughter, Stephanie Shanklin, about the residence's condition under Shooshanian's care and the condominium association's complaints about how he maintained the yard.

When a pro se litigant is "obviously attempting to accomplish" an action, the trial court should inform the litigant of the proper procedure for that action.[23] But a trial court is not required "to instruct a pro se litigant as to each step in litigating a claim" because such involved assistance "would compromise the court's impartiality in deciding the case by forcing the judge to act as an advocate for one side." [24]

The record reflects that Shooshanian appeared to understand trial procedure. He obtained affidavits from his witnesses but also subpoenaed them because he understood he would need to present his witnesses in court for cross-examination. When the trial court explained to Shooshanian what his trial brief should contain and accomplish, Shooshanian responded: "Okay. Okay. I know how it works." Shooshanian never asked the trial court about grounds for objecting to testimony nor attempted to object when Shanklin testified about the residence's condition and the condominium association's complaints. Because Shooshanian did not make an obvious attempt to prevent Shanklin from testifying on these subjects, the trial

**21.** *Id.* at 988 (citing *Maynard v. Bullis*, 99 Cal. App.2d 805, 222 P.2d 685, 686 (1950) and *Benson*, 204 P.2d at 319).

**22.** *Id.* at 988.

**23.** *Breck v. Ulmer*, 745 P.2d 66, 75 (Alaska 1987).

**24.** *Bauman v. State, Div. of Family & Youth Servs.*, 768 P.2d 1097, 1099 (Alaska 1989).

court did not have an obligation to instruct him in the proper procedure for raising objections.

Shooshanian cites *Morkal v. State*,[25] an unpublished court of appeals opinion, to support his argument that trial courts are required to inform pro se litigants of their ability to object to hearsay testimony. The question in *Morkal* was whether the trial court should have sua sponte excluded hearsay statements.[26] The court of appeals noted that the trial court had specifically explained the hearsay rule to Morkal before trial,[27] and from this Shooshanian infers that the trial court in his case had an obligation to make this same explanation to him. But whether a trial court is obligated to explain the hearsay rule to a pro se litigant was not at issue in *Morkal*, and there the court of appeals concluded that "[h]earsay evidence is admissible if the opposing party does not object to it."[28] This same conclusion holds for Shooshanian's argument regarding testimony to which he did not object at trial.

Finally, we note the trial court did filter hearsay and irrelevant testimony on Shooshanian's behalf. The trial court sua sponte prevented Brady from eliciting hearsay testimony from the condominium association's president regarding her discussions with Shanklin about Shooshanian. And in its decision, the trial court expressly stated it disregarded as irrelevant the president's testimony that the association was considering evicting Shooshanian for violating its covenants.

The trial court did not abuse it discretion by not explaining how to make hearsay and relevance objections or by not excluding hearsay evidence to which no objection had been raised.

### C. The Trial Court Did Not Commit Plain Error By Not Sua Sponte Disqualifying Brady As Trial Counsel.

Shooshanian argues that it was an abuse of discretion to allow Brady to act as Dire's attorney at trial "when it was plain that [Brady] was a necessary fact witness in the proceedings." Shooshanian waived this issue because neither he nor Dire attempted to call Brady as a witness and Shooshanian never asked the trial court to disqualify Brady for any reason.[29] Accordingly, we review Brady's continued role as trial counsel for plain error.[30] From the record before us it appears Brady's only pretrial involvement was that Dire may have asked him to draft a new lease and Brady may have used the prospect of a new lease as leverage to get Shooshanian to pay back rent owed Dire. These disputed facts are not material to whether Dire and Shooshanian formed an enforceable contract for the sale of the residence or an extension of the option. Brady was therefore not a necessary witness at trial.

The trial court did not commit plain error by not sua sponte disqualifying Brady as Dire's trial counsel.

### D. The Trial Court Did Not Err By Concluding Dire Was Entitled To Possession Of The Residence.

Shooshanian challenges the trial court's grant to Dire of possession of the residence, arguing that the trial court "fail[ed] to properly take into account or otherwise disregard[ed] evidence tending to prove that [Shooshanian] had both a contractual and equitable interest in the [premises]." This argument challenges the trial court's

**25.** Mem. Op. & J. No. 7796, 2005 WL 712230 (Alaska App. March 30, 2005). Memorandum opinions of the court of appeals do not create legal precedent. *See* Alaska Appellate Rule 214(d).

**26.** *Id.* at 1.

**27.** *Id.*

**28.** *Id.* (citing *Byrd v. State*, 626 P.2d 1057, 1058 (Alaska 1980) and *Vaska v. State*, 74 P.3d 225, 230 (Alaska App.2003)).

**29.** *See Anchorage Chrysler Ctr., Inc. v. Daimler-Chrysler Motors Corp.*, 221 P.3d 977, 985 (Alaska 2009) ("[I]n general, 'a party may not present new issues or advance new theories to secure a reversal of a lower court decision.'" (quoting *Zeman v. Lufthansa German Airlines*, 699 P.2d 1274, 1280 (Alaska 1985))).

**30.** *Tybus*, 989 P.2d at 1285.

determination that Shooshanian's option right expired unconsummated.

The trial court concluded the handwritten lease was insufficient to support a sale because it did not contain an agreed-upon sale price or financing terms. In finding that Shooshanian and Dire did not agree on a sale price when Dire signed the handwritten lease, the trial court reasoned that if they had done so the last sentence setting out the purchase price would have been in Dire's handwriting like the rest of the document. As to Shooshanian's claim that the parties agreed on owner-financing, the trial court noted that the handwritten lease did not provide for it. The court further found it unlikely Dire would have agreed to finance the purchase because there was no evidence she had the resources to do so and because it would take "an extremely long period of time" to pay off a $140,000 loan in $800 installments at one-half a percentage point below the rate commercial banks offered. Finally, the trial court noted that Dire's continued payment of insurance and property taxes and Shooshanian's continued deduction of repair costs from his monthly payments were inconsistent with a mortgage arrangement.

Shooshanian argues that testimony supports his contention that Dire agreed on a $140,000 purchase price and owner-financing when she signed the handwritten lease. But his argument challenges the weight the trial court afforded the testimony and evidence at trial. We give great deference to the trial court's credibility findings.[31] It was not clearly erroneous for the trial court to find that the parties had not agreed on a sale price and that it was unlikely Dire had agreed to finance the sale.

Shooshanian also argues that the trial court should have found that he and Dire made an "enforceable oral agreement ... that the option would be extended until such time as Dire provided Shooshanian with a purchase agreement containing the remaining needed terms." But at trial Shooshanian testified that he did not give Dire anything of value to extend the option beyond the handwritten lease's expiration. It was not clear error for the trial court not to find Shooshanian and Dire agreed he would continue to pay $800 per month in exchange for an extension of the option right. Those payments are consistent with a month-to-month tenancy established when a landlord accepts rent after the expiration of a fixed-term lease.[32] Nor was the trial court's finding clear error even if Dire told Shooshanian that Brady would draft a new lease or if the purchase price increased after the handwritten lease expired. Willing parties can draft a new lease or negotiate a real estate sale in the absence of an option agreement.

It was not clearly erroneous to find that the parties never agreed on a price or financing terms to consummate the transaction contemplated by the option language in the handwritten lease. Because a real estate sale agreement without these terms is not enforceable[33] and because the parties never entered into an enforceable agreement during the three-year period after Shooshanian gave notice of his desire to purchase the residence under his option right,[34] we deter-

---

31. *See* Alaska R. Civ. P. 52(a) ("[D]ue regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses."); *Rausch v. Devine*, 80 P.3d 733, 737 (Alaska 2003) ("The trial court's findings regarding the credibility of witnesses and weighing of the evidence may be reversed only if clearly erroneous." (citation omitted)).

32. If a landlord consents to a tenant's continued occupancy after the expiration of the rental agreement's term, the resulting periodic tenancy is month-to-month unless the tenant pays weekly rent. AS 34.03.290(c); AS 34.03.020(d).

33. *See Hollaus v. Arend*, 511 P.2d 1074, 1075 (Alaska 1973) (holding writing describing real

estate sale was not enforceable because material terms were omitted or ambiguous, including down payment, sale date, security, and rate of interest).

34. The option in the handwritten lease can be viewed as an agreement to negotiate a sale of the condominium. "We will ... enforce an agreement to negotiate only if it contains 'a more specific way to resolve ... differences,' such that we are able to discern when the agreement to negotiate has been breached." *Valdez Fisheries Dev. Ass'n, Inc. v. Alyeska Pipeline Serv. Co.*, 45 P.3d 657, 667 (Alaska 2002) (quoting *Davis v. Dykman*, 938 P.2d 1002, 1008–09 (Alaska 1997)). Even if enforceable negotiation procedures were in the handwritten lease, a court could not force

627

mine that the trial court did not err in concluding that Shooshanian had no cognizable interest in the property other than as a month-to-month tenant. The trial court therefore did not err in concluding that Dire was entitled to take possession of the residence.

## V. CONCLUSION

We AFFIRM the trial court's decision in all respects.

Dire to reach a final agreement with Shooshanian because "an agreement to negotiate is not an agreement to agree." *Id.*