NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| DAVID LAPOINT, | ) | |
| | ) | Supreme Court No. S-17973 |
| Appellant, | ) | |
| | ) | Superior Court No. 3AN-19-11771 CI |
| v. | ) | |
| | ) | <u>MEMORANDUM OPINION</u> |
| ALICIA WATKINS, f/k/a Alicia LaPoint, | ) | <u>AND JUDGMENT</u>* |
| | ) | |
| Appellee. | ) | No. 1903 – July 6, 2022 |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Adolf V. Zeman, Judge.

Appearances: Dan Allan, Law Offices of Dan Allan & Associates, Anchorage, for Appellant. Notice of nonparticipation filed by Erin M. Lillie, Nyquist Law Group, Anchorage, for Appellee.

Before: Winfree, Chief Justice, Maassen, Carney, Borghesan, and Henderson, Justices.

## I.     INTRODUCTION

The superior court granted a husband's request to leave the courtroom during his divorce trial until after his wife concluded her testimony. At the conclusion of the wife's testimony, the court heard her closing argument and tentatively decided some aspects of the divorce. The court thereafter issued final written orders. The husband appeals the superior court's orders, contending that he was never invited to

---

\*      Entered under Alaska Appellate Rule 214.

rejoin proceedings after his wife testified, which deprived him of the opportunity to put on his own testimony and evidence. Because the court clearly understood that the husband wished to rejoin the proceedings following the wife's testimony, and because we cannot tell from the record what, if any, efforts the court undertook to invite the husband back into the courtroom when the wife's testimony was completed, we vacate the court's decision and remand for further proceedings allowing the husband to present testimony and other evidence.

## II.    FACTS AND PROCEEDINGS

Alicia and David LaPoint married in 2012. They owned a house in Wasilla, where they lived with their three pets. In December 2019 Alicia filed for divorce.

David largely represented himself in the litigation that followed. After the superior court accepted his late answer in February 2020, David filed multiple motions containing unsubstantiated and irrelevant allegations against Alicia, her counsel, and what he referred to as the "Anchorage Court system." These filings were largely unsuccessful, and at one point the court warned David that his motion practice could be considered vexatious litigation.

After an abeyance due to the COVID-19 pandemic, the divorce trial was scheduled for August 2020. At the August trial call, the court granted a continuance, pushing the trial date to October. The trial was then scheduled to occur by video conference.

The court convened by video conference in October, but David was again not ready to proceed. The court had trouble assessing David's situation because he participated only by audio and not video. Probing David's mindset and level of preparation, the court asked him several questions. David answered that he was not prepared for trial, that he was struggling and "shut down," and that he was unable to participate in the property distribution that day because the stakes "sound[ed] like a

bigger deal to [him]" than to Alicia or the court. Without the ability to see David on video and better assess his status, the court decided it should not proceed with trial, and instead continued the matter for three weeks.

To facilitate David's participation in the continued trial, the court provided some guidance. The court encouraged David to consult with an attorney. In the event David could not obtain or consult with counsel, the court reminded him of resources available through the Alaska Court System's Family Law Self-Help Center.[1] The court also identified the specific issues that it expected to hear about and to decide in the divorce trial.

The court emphasized that it intended this three-week delay to be the last continuance. At the end of the hearing, David and Alicia agreed to a new trial date on November 5, 2020. In the calendaring notice sent to David and Alicia, the court indicated that David would appear in person.

Trial proceeded on November 5. David did not arrive on time for the scheduled 8:30 a.m. start. Initially court staff contacted David by telephone to ascertain his status. Understanding that he was on his way, the court further waited for David, stating on the record: "Whether [David] wants to participate or not, I feel I've given him every opportunity to do so, including two continuances of this matter." The court eventually started without David at just after 9:00 a.m.

David showed up in court several minutes later. The court had already sworn in Alicia and commenced her testimony. The court reminded David that they were scheduled to start at 8:30 a.m. and told him he had not "missed much." Because David arrived while Alicia was testifying, the court instructed him regarding the

---

[1] *See, e.g.*, *Self-Help Center: Family Law*, ALASKA COURT SYSTEM, https://courts.alaska.gov/shc/family/selfhelp.htm (last visited Mar. 31, 2022).

procedure going forward. The court informed David that Alicia was currently "present[ing] her side of the case," but when she was done David would have an opportunity to "cross-examine [and] ask her questions" and then to present his case. David affirmed that he understood the court's instruction.

David interrupted Alicia's testimony multiple times. He first interrupted to ask if Alicia was "under oath" as he had "missed the beginning of [her testimony]." David questioned the veracity of Alicia's testimony, insisting that the court address the same unsubstantiated accusations about Alicia and her lawyer contained in his previous failed motions. The court requested that David stop interrupting, stating that it was "not going to get into this back and forth today," that the court was "here for the divorce trial . . . not here to hear about [David's] grievances with [Alicia's counsel]," and that David would "have [his] opportunity to talk." When David interrupted further, the court reiterated that David would soon have his opportunity to be heard. Alicia's testimony about the couple's property then continued.

About 30 minutes into the trial, David interjected that he'd "like to ask for a disability accommodation . . . [and] step out until [Alicia had] finished testifying." The court sought clarification from David, asking if David did not "want to listen to her testimony?" David confirmed that he did not want to listen to her testimony. The court then granted David's request and he left the courtroom.

Alicia's testimony continued for approximately 30 more minutes, covering topics relating to the property distribution, including her and David's employment and sources of income during the marriage, the three marital pets, and the marital home. Toward the end of Alicia's testimony, the court went off record to give Alicia a break, noting, "We'll see if Mr. LaPoint rejoins us . . . ." The break lasted for about 15 minutes.

When the proceedings resumed following the break, David was not present. Alicia completed her testimony. The court then explained how it would proceed:

> I feel that I have done what I can to try to give [David] his time here, including, you know, two previous continuances to get us here. He's chosen either not to participate or, you know, marginally participate. So at this point I – I'll turn it back over to you for a brief closing and then I will – I think what I'm going to do today is I will at least give you provisional findings on most of the issues and then we'll take it from there.

The court suggested it would likely give David "one more opportunity . . . to submit written evidence," and further emphasized that it was attempting to balance the need to facilitate David's opportunity to make his case with allowing Alicia "her day in court" and providing "closure" to the proceedings.

At that point the court asked Alicia to give her closing argument. Alicia offered exhibit 52, a table listing the couple's property subject to division that had guided her testimony at trial, and provided closing argument. The court then granted the divorce and described tentative property distribution findings on the record, but it reserved decision on the issue of dividing the couple's pets. The court also reiterated that it intended to give David "one more opportunity," including "at least a week to respond" to its eventual order. The court then issued a written divorce decree. The record does not contain any notice to David before or following the decree regarding the court's potential findings or the opportunity to provide further evidence.

Following the trial and issuance of the decree, David filed numerous motions, many of which repeated allegations David had made in his failed pretrial motions. The court denied his motions.

The court issued written findings of fact and conclusions of law. Describing why a "50/50" property distribution was equitable, the court noted that "there

[was] no disagreement on the value of the assets and debts" because Alicia "included [David's] proposed values in her property division table." On the issue of pet custody, the court gave Alicia custody of two pets and David custody of one pet. Assessing the frequency and content of David's motion practice, including 30 more motions since the initial warning, the court determined David was a vexatious litigant and awarded Alicia attorney's fees as "a credit" in the property distribution. Nothing in the record indicates that David had the chance to rebut or respond to the court's final findings and conclusions.

David appeals. Alicia is not participating.

## III.   STANDARD OF REVIEW

We "review a superior court's procedural decisions for abuse of discretion."[2] The court's procedural decision amounts to an abuse of discretion "when a party has been deprived of a substantial right or seriously prejudiced."[3]

## IV.   DISCUSSION

David argues that the superior court erred for several reasons, but we focus only on his complaint that the court abused its discretion when it concluded trial without telling David that Alicia's testimony had been completed and allowing him the opportunity to make his case.[4] Though we recognize that David's conduct proved difficult at times for the court and Alicia, and though we observe that the court took pains throughout other portions of the case to facilitate David's ability to participate, we agree

---

[2]   *Werba v. Ass'n of Vill. Council Presidents*, 480 P.3d 1200, 1204 (Alaska 2021) (quoting *Rockstad v. Erikson*, 113 P.3d 1215, 1219-20 (Alaska 2005)).

[3]   *Shooshanian v. Dire*, 237 P.3d 618, 623 (Alaska 2010) (quoting *Siggelkow v. Siggelkow*, 643 P.2d 985, 986-87 (Alaska 1982)).

[4]   We determine his other claims are without merit and decline to address them any further.

that to conclude the trial without making some effort to notify David that Alicia's testimony had ended constitutes an abuse of discretion.

When David requested to leave the courtroom, he clearly expressed that he wanted to leave until Alicia finished her testimony. Before allowing him to leave, the court further clarified that David made this request because he did not want to listen to Alicia's testimony. Given this exchange, the court understood that David wanted to leave, but also that he wished to return at a specific point.

Yet the record reflects no efforts by the court to let David know when Alicia had completed her testimony. The court recessed for 15 minutes in the midst of Alicia's testimony, indicating that perhaps David would rejoin the proceedings. But the record contains no reference to any contact with, or attempt to contact, David during the break. Once Alicia actually completed her testimony, the court decided to proceed without David, appearing to interpret his request to leave as a decision "not to participate or . . . [to] marginally participate." The court did not make or describe any efforts on the record to check the hallway outside the courtroom for David.[5] David asserts that he was waiting outside the courtroom to rejoin the proceedings, and that because "[n]either the judge nor any of the court employees left the courtroom to alert [him]," he only "realized the hearing had concluded without his participation" when he subsequently went in the courtroom and spoke to court employees. While the court suggested on the record that it would allow David an opportunity to respond in writing to its proposed findings after the trial, the record lacks any evidence that the court followed through with this

---

[5] We acknowledge that it is possible the court made such efforts to find David and have him return to the trial. But there is nothing in the record that indicates or describes such efforts, and we can only decide this appeal based on the information before us. *See* Alaska R. App. P. 210(a) ("The record on appeal consists of . . . proceedings before the trial court, and transcripts, if any, of the trial court proceedings.").

procedure.[6] Given the court's awareness that David wanted to rejoin the trial following Alicia's testimony, it abused its discretion by failing to make any efforts on the record to inform David of the completion of Alicia's testimony and his ability to rejoin the proceedings to make his case.[7]

The court's error in concluding trial without any record of attempts to notify David that he could rejoin the proceedings prejudiced David's ability to present his case and provide information pertinent to the court's distribution of property.[8] David contends that had he been able to rejoin the trial, he would have provided testimony disputing the marital nature of some of the property divided by the court, challenging Alicia's valuation of certain property, and contesting Alicia's ability to recover certain "credits" awarded by the court. Moreover, David's testimony may have addressed additional issues material to the court's decisions, such as his current employment status and reasons for any unemployment, his payment for any expenses associated with the marital home, and his ability to care for the couple's pets.

Though the court's decision to end the trial as it did was an abuse of discretion, we observe that the court otherwise made extensive efforts on the record to accommodate David and to provide him appropriate procedural guidance. Before the

---

[6]     It is also not clear whether the kind of written rebuttal that the court described would provide David sufficient opportunity to make his case; however, we need not decide that point when the opportunity was not extended.

[7]     *Cf. Shooshanian*, 237 P.3d at 624-25 (finding no abuse of discretion when unrepresented litigant did not make "obvious attempt" to make procedural motion).

[8]     *See Ryfeul v. Ryfeul*, 650 P.2d 369, 372 (Alaska 1982) (reversing superior court for holding trial without husband arrested on outstanding bench warrant on his way to attend trial when court knew of husband's "frustrated attempt to attend the hearing," could have secured his presence with "relative ease," and could have used his presence to resolve important questions at issue).

trial, the court granted David several continuances, directed him towards the Family Law Self-Help Center, and clarified the issues that the court would need to decide in the divorce proceedings. During the trial, the court respectfully engaged with David's interruptions and took time to explain the proceedings, including when David would have his opportunity to present his case. We recognize and appreciate those efforts of the court. But given the court's decision to conclude trial without any record of efforts to have David rejoin, and the resulting prejudice to him, we must vacate the court's division of property[9] and remand for the court to give David an opportunity to present his case.

## V. CONCLUSION

We VACATE the superior court's findings and conclusions as to the property division and REMAND for further proceedings consistent with this decision.

---

[9]  In vacating the superior court's division of the parties' property, we do not disturb the court's November 9, 2020 divorce decree.